ELSIE J. KELLY, Sister of BETTY JEAN JEFFREYS, Deceased Employee, Plaintiff v. DUKE UNIVERSITY, Employer, (Self-Insured), Defendant

No. COA07-874

(Filed 3 June 2008)

## 1. Workers' Compensation— occupational disease—statute of limitations—date of injury—date of disability

The Industrial Commission did not err by concluding that plaintiff's claim for workers' compensation death benefits was not barred by the statute of limitations set forth in N.C.G.S. § 97-38 because: (1) "date of injury" and "date of disability" are terms of art under N.C. Gen. Stat. § 97-21 with different meanings; (2) in an occupational disease case, the six-year statute of limitation provided by N.C.G.S. § 97-38 begins to run from the date of

KELLY v. DUKE UNIV.

[190 N.C. App. 733 (2008)]

the employee's disability, which is the incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment; whereas N.C.G.S. § 97-2(6) provides that the term injury shall mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form; (3) the fact that this is an occupational disease case as opposed to an injury by accident case reveals the date relevant for purposes of the statute of limitations is the date of disability rather than the date of injury; and (4) the statute of limitations began to run on 1 April 1999, the date the Commission found that decedent became incapable of earning the wages that she was receiving at the time of the injury, and the fact that decedent began experiencing symptoms of her occupational disease on 1 April 1997, the stipulated date of injury, is irrelevant, as decedent maintained her original earning capacity until 1 April 1999.

**2. Workers' Compensation— cause of death—compensable occupational disease—weight of expert testimony**

The Industrial Commission did not err in a workers' compensation case by its finding of fact that the cause of decedent's death was her compensable occupational diabetic disease because: (1) the decision concerning what weight to give expert evidence is a duty for the Commission and not the Court of Appeals; (2) although plaintiff's medical expert indicated that it was possible that decedent died of complications from her upper respiratory infection, the expert testified that it was more likely than not that decedent's diabetes caused her death; and (3) this opinion was based not only on the temporal sequence of events, but also on statistical information and the expert's knowledge of the history of decedent's condition.

**3. Workers' Compensation— total disability compensation— separate award for loss of vision**

The Industrial Commission erred in a workers' compensation case by awarding decedent's estate a separate award of 240 weeks for loss of vision under N.C.G.S. § 97-31 when decedent had already been awarded total disability compensation under N.C.G.S. § 97-29, and the Commission's award of compensation in the amount of $473.20 per week for 240 weeks is reversed, because: (1) our Supreme Court has held that the "in lieu of" clause of N.C.G.S. § 97-31 was intended to prevent double recovery without making the schedule provided by § 97-31 an exclusive

remedy; (2) where an employee can show both a disability under N.C.G.S. §§ 97-29 or 97-30 and a specific physical impairment under N.C.G.S. § 97-31, he may not collect benefits pursuant to both schemes, but rather is entitled to select the statutory compensation scheme which provides the more favorable remedy; and (3) as a general rule, stacking of benefits covering the same injury for the same time period is prohibited.

**4. Costs— attorney fees—workers' compensation appeal**

The Court of Appeals exercised its discretion in a workers' compensation case and granted plaintiff's request for an award of attorney fees under N.C.G.S. § 97-88 which provides that the Commission or a reviewing court may award costs to an injured employee if the insurer has appealed and, on appeal, the Commission or reviewing court orders the insurer to make, or continue to make, payments to the employee. This case is remanded to the Commission to determine the amount of reasonable attorney fees incurred by plaintiff on this appeal.

Appeal by defendant from an Opinion and Award filed 27 April 2007 by the North Carolina Industrial Commission. Heard in the Court of Appeals 16 January 2008.

*Lennon & Camak, P.L.L.C., by George W. Lennon and Michael W. Bertics, for plaintiff appellee.*

*Cranfill, Sumner & Hartzog, L.L.P., by Jonathan C. Anders and Meredith L. Taylor, for defendant appellant.*

McCULLOUGH, Judge.

Defendant appeals an Opinion and Award of the North Carolina Industrial Commission ("the Commission"), finding that Betty J. Jeffreys ("decedent") died as a proximate result of a compensable occupational disease and awarding decedent's sole surviving sibling, Elsie J. Kelley ("plaintiff"), death benefits pursuant to N.C. Gen. Stat. § 97-38 (2007).

The evidence before the Commission tended to show that decedent began working as a medical secretary in the Anesthesia Department at Duke University Medical Center ("defendant") on 13 March 1996.

As part of decedent's job responsibilities, decedent provided secretarial and administrative support to an exceptionally demanding

doctor. This doctor criticized decedent in the presence of others and was generally abusive towards her. The extreme stress of decedent's work environment exacerbated her pre-existing diabetic condition and caused her overall health to deteriorate. With the aggravation of her diabetic condition, in April 1997, decedent began to experience a loss of most of the vision in her right eye. In January 1998, decedent lost most of the vision in her left eye. Despite her vision problems, decedent continued to work for defendant until 1 April 1999, when she was placed on disability retirement.

On 8 April 1999, decedent filed a Form 18, claiming that while employed by defendant, decedent sustained an injury by accident or occupational disease on 11 April 1997 as a result of mental stress induced by her work environment.

On 28 December 2000, following a hearing of the matter, Deputy Commissioner Jones of the North Carolina Industrial Commission ("Deputy Commissioner Jones") filed an Opinion and Award concluding that decedent had contracted a compensable occupational disease in which her stressful work environment aggravated and accelerated her pre-existing diabetic condition, anxiety, depression, and carpal tunnel syndrome. Deputy Commissioner Jones concluded that decedent's diabetes resulted in decedent's loss of vision in both eyes and awarded decedent total disability compensation benefits pursuant to N.C. Gen. Stat. § 97-29 (2007) beginning on 1 April 1999.

On 2 February 2001, Dr. Scott V. Joy began treating decedent's various conditions, including her insulin-dependent diabetes. Decedent routinely documented her glucose levels in logbooks, which Dr. Joy reviewed during their appointments. These glucose levels began increasing significantly in 2003, and Dr. Joy considered treating decedent with a continuous glucose monitor.

On 7 January 2004, decedent called Dr. Scott's triage nurse, stating that she had been sick for three weeks with chest congestion and a cough. Based on this phone call, Dr. Joy diagnosed decedent with an upper respiratory infection and prescribed her an antibiotic. On 10 January 2004, decedent died. Decedent did not leave behind any dependents and was survived only by plaintiff, her sister.

Although no one performed an autopsy on decedent to determine the cause of decedent's death, Dr. Joy stated that it was a common practice to complete a death certificate without performing an autopsy. Dr. Joy opined that although it was possible that decedent died due to complications from her respiratory infection, the most

**KELLY v. DUKE UNIV.**

[190 N.C. App. 733 (2008)]

likely cause of decedent's death was a cardiovascular event secondary to complications of diabetes. Defendant did not offer any medical evidence to rebut Dr. Joy's opinion.

The Commission found that decedent's death was proximately caused by complications from her compensable diabetic condition and awarded plaintiff death benefits pursuant to N.C. Gen. Stat. § 97-38 and funeral expenses pursuant to N.C. Gen. Stat. § 97-40 (2007). In addition, the Commission concluded that pursuant to N.C. Gen. Stat. § 97-31 (2007), plaintiff's estate had a vested right to payment of 240 weeks of compensation for decedent's industrial blindness.

On appeal, defendant contends that the Commission erred by: (1) failing to conclude that plaintiff's claim for death benefits was barred by the statute of limitations set forth in N.C. Gen. Stat. § 97-38; (2) making findings of fact that are not supported by competent evidence; and (3) allowing plaintiff to recover damages under both N.C. Gen. Stat. § 97-29 (2007) and N.C. Gen. Stat. § 97-31. In addition, plaintiff seeks an award of attorney's fees under N.C. Gen. Stat. § 97-88 (2007).

## I. Statute of Limitations

[1] Defendant first contends that the Commission erred by failing to conclude that plaintiff's claim was barred by the statute of limitations set forth in N.C. Gen. Stat. § 97-38. Specifically, defendant contends that because the parties stipulated throughout the proceedings that decedent's injury occurred on 11 April 1997, the statute of limitations began to run as of that date and the Commission was without authority to determine that decedent was not disabled until 1 April 1999. Because we find that "date of injury" and "date of disability" are terms of art under N.C. Gen. Stat. § 97-2 (2007), we disagree.

Death benefits under the Workers' Compensation Act are governed by N.C. Gen. Stat. § 97-38, which provides, in pertinent part:

If death results proximately from a compensable injury **or occupational disease** and [occurs] **within six years** thereafter, or within two years of the final determination of disability, whichever is later . . . the employer shall pay . . . compensation[.]

*Id.*

We have held that in an occupational disease case, the six-year statute of limitation provided by § 97-38 begins to run from the date

of the employee's "disability," as defined by N.C. Gen. Stat. § 97-2(9), which is the " 'incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment.' " *Joyner v. J.P. Stevens and Co.*, 71 N.C. App. 625, 626, 322 S.E.2d 636, 637 (1984) (citation omitted), *disc. review denied*, 313 N.C. 330, 327 S.E.2d 891 (1985). "Injury," on the other hand, is defined by N.C. Gen. Stat. § 97-2(6), which provides that the term " '[i]njury . . .' shall mean **only injury by accident** arising out of and in the course of the employment, **and shall not include a disease in any form**[.]" Thus, it is clear that under § 97-2, "injury" and "disability" do not have the same meanings.

Because the case before us is an occupational disease case as opposed to an injury by accident case, we find that the date relevant for purposes of the statute of limitations is the "date of disability" rather than the "date of injury." Here, the statute of limitations began to run on the date of disability, 1 April 1999, which the Commission found to be the date that decedent became incapable of earning the wages that she was receiving at the time of the injury. The fact that decedent began experiencing symptoms of her occupational disease on 1 April 1997, the stipulated date of injury, is irrelevant to our analysis, as decedent maintained her original earning capacity until 1 April 1999. As such, the Commission properly concluded plaintiff's claim was not barred by the statute of limitations set forth in N.C. Gen. Stat. § 97-38. Accordingly, this assignment of error is overruled.

## II. Cause of Decedent's Death

[2] Next, defendant contends that the Commission's finding of fact as to the cause of decedent's death is not supported by competent evidence of record. Defendant argues that Dr. Joy's opinion was insufficient, as it was based solely on statistical data and no autopsy was performed to determine the actual cause of decedent's death. We disagree.

In reviewing a decision by the Commission, this Court's role "is limited to determining whether there is any competent evidence to support the findings of fact, and whether the findings of fact justify the conclusions of law." *Cross v. Blue Cross/Blue Shield*, 104 N.C. App. 284, 285-86, 409 S.E.2d 103, 104 (1991). The Commission's findings of fact are conclusive upon appeal if supported by competent evidence, even if there is evidence to support a contrary finding. *Morrison v. Burlington Industries*, 304 N.C. 1, 6, 282 S.E.2d 458, 463 (1981). On appeal, this Court may not reweigh the evidence or assess

credibility. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998), *reh'g denied,* 350 N.C. 108, 532 S.E.2d 522 (1999). Findings of fact may be set aside on appeal only "when there is a complete lack of competent evidence to support them[.]" *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000).

The plaintiff in a workers' compensation case bears the burden of initially proving "each and every element of compensability," including a causal relationship between the injury and his employment. *Whitfield v. Laboratory Corp. of Am.*, 158 N.C. App. 341, 350, 581 S.E.2d 778, 784 (2003). Plaintiff must prove causation by a "greater weight" of the evidence or a "preponderance" of the evidence. *Phillips v. U.S. Air, Inc.*, 120 N.C. App. 538, 541-42, 463 S.E.2d 259, 261 (1995), *aff'd,* 343 N.C. 302, 469 S.E.2d 552 (1996).

In cases involving complicated medical questions, only an expert can give competent opinion testimony as to the issue of causation. *Click v. Freight Carriers*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). Where, as here, medical opinion testimony is required, "medical certainty is not required, [but] an expert's 'speculation' is insufficient to establish causation." *Holley v. ACTS, Inc.*, 357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003). An expert witness's passing use of the word "speculate," however, does not necessarily establish that the witness engaged in speculation. *Id.* Further, the degree of the doctor's certainty goes to the weight of his testimony. *Martin v. Martin Bros. Grading*, 158 N.C. App. 503, 507-08, 581 S.E.2d 85, 88, *cert. denied,* 357 N.C. 579, 589 S.E.2d 127 (2003). The decision concerning what weight to give expert evidence is a duty for the Commission and not this Court. *See Adams*, 349 N.C. at 681, 509 S.E.2d at 414.

In the instant case, the only medical deposition testimony offered into evidence was the testimony of Dr. Joy taken on 29 June 2005. Dr. Joy's deposition transcript on direct examination reads in pertinent part:

Q. (By Mr. Lennon) Do you have an opinion satisfactory to yourself and to a reasonable degree of certainty as an expert in internal medicine, and certified diabetes educator, and as her treating physician, regarding whether **more likely than not, Betty Jean's death resulted proximally from her compensable diabetic condition?**

A. Yes, I believe it's complications of diabetes.

\* \* \* \*

Q. All right. In your opinion is it likely that the upper respiratory infection caused her death?

A. I think there's no evidence to suggest that, and she was treated appropriately for upper respiratory infection.

(Emphasis added.) Dr. Joy's deposition transcript on cross-examination reads in pertinent part:

Q. Okay. It's pretty much speculation [that decedent died from a cardiovascular event related to diabetes], isn't it?

A. I think based on the data and knowing the complications that Betty Jean had, **cardiovascular events** [related to diabetes] **are the number one**, but she did have an upper respiratory infection that may have led to some problems.

(Emphasis added.)

Thus, although Dr. Joy indicated that it was possible that decedent died of complications from her upper respiratory infection, Dr. Joy testified that it was "more likely than not" that decedent's diabetes caused her death. *See Whitfield*, 158 N.C. App. at 351, 581 S.E.2d at 785 ("We acknowledge that the 'mere possibility of causation,' as opposed to the 'probability' of causation, is insufficient to support a finding of compensability.") (citation omitted). This opinion was based not only on the temporal sequence of events, but also on statistical information and Dr. Joy's knowledge of the history of decedent's condition. We therefore conclude that there is competent evidence in the record to support the Commission's finding that decedent's death was proximately caused by her compensable occupational disease. This assignment of error is overruled.

### III. Compensation under N.C. Gen. Stat. § 97-31

[3] Finally, defendant contends that the Commission erred in awarding decedent's estate a separate award of 240 weeks for loss of vision under N.C. Gen. Stat. § 97-31 because decedent had already been awarded total disability compensation under § 97-29. We agree.

N.C. Gen. Stat. § 97-31 provides:

In cases included by the following schedule the compensation in each case shall be paid for disability during the healing period and in addition the disability shall be deemed to continue

for the period specified, and **shall be in lieu of all other compensation**, including disfigurement, to wit:

\* \* \* \*

(17) The loss of both hands, or both arms, or both feet, or both legs, or both eyes, or any two thereof, shall constitute total and permanent disability, to be compensated according to the provisions of G.S. 97-29. The employee shall have a vested right in a minimum amount of compensation for the total number of weeks of benefits provided under this section for each member involved. When an employee dies from any cause other than the injury for which he is entitled to compensation, payment of the minimum amount of compensation shall be payable as provided in G.S. 97-37.

(Emphasis added.)

Our Supreme Court has held that the "in lieu of" clause of § 97-31 was intended to "prevent[] double recovery without making the schedule [provided by § 97-31] an exclusive remedy." *Whitley v. Columbia Lumber Mfg. Co.*, 318 N.C. 89, 98, 348 S.E.2d 336, 341 (1986). Thus, "[w]here an employee can show *both* a disability pursuant to G.S. §§ 97-29 or 97-30 and a specific physical impairment pursuant to G.S. § 97-31, he may not collect benefits pursuant to both schemes, but rather is entitled to select the statutory compensation scheme which provides the more favorable remedy." *Collins v. Speedway Motor Sports Corp.*, 165 N.C. App. 113, 119, 598 S.E.2d 185, 190 (2004). As a general rule, "stacking of benefits covering the same injury for the same time period is prohibited[.]" *Gupton v. Builders Transport*, 320 N.C. 38, 43, 357 S.E.2d 674, 678 (1987).

Plaintiff argues that decedent never made an election to receive benefits under § 97-29. We disagree.[1] Here, the Commission found as a fact that decedent suffered from a loss of vision in both eyes and that she was compensated for that impairment by an award of

---

1. As an aside, however, we note that even though decedent elected an award of benefits under § 97-29, if decedent had died prior to receiving a full 240 weeks of such payments, plaintiff would then be entitled to recover the more generous vested benefits available pursuant to § 97-31, less the amount she had already received. *See Gupton*, 320 N.C. at 43, 357 S.E.2d at 678 ("[B]ecause the prevention of double recovery, not exclusivity of remedy, is patently the intent of the 'in lieu of all other compensation' clause in N.C.G.S. § 97-31, a plaintiff entitled to select a remedy under either N.C.G.S. § 97-31 or N.C.G.S. § 97-30 may receive benefits under the provisions offering the more generous benefits, *less* the amount he or she has already received.").

total disability compensation pursuant N.C. Gen. Stat. § 97-29, in the amount of $709.77 per week, beginning 1 April 1999. She continued to receive these payments until the date of her death in 2004. Because it is well settled that the "in lieu of" clause of § 97-31 is a bar to double recovery, decedent is not entitled to recover once under § 97-29 and then again under § 97-31. Therefore, the Commission erred in concluding that decedent's estate had a vested right in an additional 240 weeks of compensation pursuant to § 97-31. Accordingly, we reverse the Commission's award of compensation in the amount of $473.20 per week for 240 weeks.

### IV. Attorney's Fees

[4] Now, we turn to plaintiff's request for an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88. Section 97-88 provides that the Commission or a reviewing court may award costs to an injured employee if the insurer has appealed and, on appeal, the Commission or reviewing court orders the insurer to make, or continue to make, payments to the employee. *Flores v. Stacy Penny Masonry Co.*, 134 N.C. App. 452, 459, 518 S.E.2d 200, 205 (1999). We conclude that the requirements of § 97-88 are satisfied, and we exercise our discretion to grant plaintiff's request. We remand to the Commission to determine the amount of reasonable attorney's fees incurred by plaintiff on this appeal.

Accordingly, the Opinion and Award of the Commission is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

Judges ELMORE and ARROWOOD concur.