WENDY SHACKLETON, as the Executrix of the Estate of BRENDA P. GAINEY, Deceased, and as the Executrix of the Estate of LEWARD BENMACK GAINEY, Deceased Employee Plaintiff v. SOUTHERN FLOORING & ACOUSTICAL COMPANY, Employer, and USF&G KEMPER INSURANCE COMPANY, Carrier, Defendants

No. COA10-734

(Filed 19 April 2011)

### 1. Workers' Compensation— death—not significantly caused by asbestosis—findings and conclusions

The Industrial Commission did not err by concluding that decedent's asbestosis neither caused nor significantly contributed to decedent's death. A doctor's testimony supported the Commission's findings, and in turn its conclusion, that asbestosis did not significantly contribute to decedent's death.

IN RE ESTATE OF GAINEY v. SOUTHERN FLOORING & ACOUSTICAL CO.

[211 N.C. App. 233 (2011)]

## 2. Workers' Compensation— attendant care—reasonable and medically necessary—misapprehension of law—matter remanded

The Industrial Commission erred by concluding there was insufficient competent medical evidence to establish that attendant care was reasonable and necessary as a result of decedent's compensable asbestosis. The Commission's requirement that a physician's prescription was a prerequisite to attendant care compensation constituted a misapprehension of law. The matter was remanded for a new determination using the correct legal standard.

Appeal by Plaintiff from Opinion and Award of the Full North Carolina Industrial Commission entered 22 March 2010 by Commissioner Christopher Scott. Heard in the Court of Appeals 10 January 2011.

*Wallace and Graham, P.A., by Edward L. Pauley, for Plaintiff-Appellant.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by Bruce A. Hamilton, Tracy L. Jones, and Leslie B. Price, for Defendants-Appellees.*

THIGPEN, Judge.

The Industrial Commission concluded Decedent's death was not caused by asbestosis and that since the attendant care of Decedent was not prescribed by a doctor, it was not compensable. We must decide whether the conclusions of law of the Industrial Commission were supported by the findings of fact, and the findings of fact, in turn, supported by the evidence. We affirm the decision of the Industrial Commission on the issue of death benefits. We remand on the issue of compensation for attendant care.

The record and procedural history of this case show the following: Leward Benmack Gainey ("Decedent") was employed by Southern Flooring & Acoustical ("Defendant") from 1969 to 1983. Decedent began his work for Defendant as a field installer, a job which primarily involved the installation of asbestos tiles in ceilings. On 8 April 1999, Decedent filed a Form 18B with the Industrial Commission, seeking benefits for his occupational disease resulting from exposure to asbestos during his employment with Defendant. On 2 September 2003, the Full Commission entered an Opinion and Award concluding

IN RE ESTATE OF GAINEY v. SOUTHERN FLOORING & ACOUSTICAL CO.

[211 N.C. App. 233 (2011)]

that "[Decedent] was last injuriously exposed to asbestos during his employment with Southern Flooring and that [Decedent] had contracted asbestosis as a result of that exposure." *Estate of Gainey v. S. Flooring & Acoustical Co.*, 184 N.C. App. 497, 500, 646 S.E.2d 604, 606 (2007). The Commission, however, "remanded the matter to a deputy commissioner for immediate hearing and Opinion and Award regarding the disability of [Decedent] as a result of his asbestosis." *Id.*, 184 N.C. App. at 500, 646 S.E.2d at 606. A deputy commissioner entered an opinion and award concluding that Decedent was totally and permanently disabled, and his asbestosis was a significant contributing factor in the disability. The Full Commission entered an Opinion and Award on 2 March 2006,[1] summarized by this Court in *Gainey*, 184 N.C. App. 497, 646 S.E.2d 604:

> [T]he Commission found that (1) [Decedent] had received medical treatment for asbestosis-related problems; (2) [Decedent] suffered from breathing problems as a result of asbestosis; (3) [Decedent] had suffered from asbestosis as a result of his employment with defendant-employer and the disease had rendered him unable to perform gainful employment since 3 December 1999; (4) [Decedent]'s breathing problems severely impaired his daily activities; (5) as a result of asbestosis, it was difficult, if not impossible, for [Decedent] to do any job that required any amount of physical activity; and (6) [Decedent] stopped working in 1995 as a result of his disease and [Decedent]'s asbestos-related condition continued to deteriorate until his death. The Commission concluded that as a result of his asbestosis, [Decedent] was entitled to permanent and total disability compensation at the weekly rate of $481.24 from 3 December 1999, the date of the panel examination by Dr. Rostand, through the date of his death, 9 May 2005. Defendants were ordered to pay the compensation awarded to [Decedent]'s estate in a lump sum, along with attorney's fees in the amount of 25% of the compensation awarded.

---

1. Decedent died on 9 May 2005, before the entry of the Full Commission's Opinion and Award regarding his disability. On 22 July 2005, Brenda Gainey, the executrix of Decedent's estate at that time, filed an amended Form 18B seeking benefits for Decedent's death. Brenda Gainey also died before the completion of the appeals process with regard to benefits stemming from Decedent's death, and Wendy Shackleton (Plaintiff), the daughter of Brenda Gainey and Decedent, qualified as the executrix of both the estates of Brenda Gainey and Decedent. Plaintiff subsequently filed a Form 33 seeking death benefits and a separate Form 33 on the issue of attendant care.

IN RE ESTATE OF GAINEY v. SOUTHERN FLOORING & ACOUSTICAL CO.

[211 N.C. App. 233 (2011)]

*Id.*, 184 N.C. App. at 500-01, 646 S.E.2d at 606-07.

On 3 July 2007, this Court affirmed the 2 March 2006 Opinion and Award of the Industrial Commission awarding Decedent permanent and total disability compensation at the weekly rate of $481.24 from 3 December 1999 until the date of his death. *See id.*, 184 N.C. App. at 500-04, 646 S.E.2d at 606-09.

In response to Plaintiff's Form 33 seeking benefits for Decedent's death, Deputy Commissioner Robert J. Harris entered an Opinion and Award on 6 December 2007 concluding that Decedent's asbestosis neither caused nor significantly contributed to Decedent's death. Deputy Commissioner Myra L. Griffen entered an Opinion and Award on 26 June 2008 in response to Plaintiff's Form 33 seeking attendant care benefits, concluding that there was "insufficient competent medical evidence to establish that attendant care was reasonable and necessary as a result of [Decedent]'s compensable asbestosis" and that Decedent's "claim for attendant care services is DENIED."

On 22 March 2010, the Full Commission entered an order affirming both orders from the Deputy Commissioners, denying Decedent's claim for compensation for death pursuant to N.C. Gen. Stat. § 97-38, and denying Decedent's claim for attendant care benefits pursuant to N.C. Gen. Stat. § 97-2(19) (2009), and N.C. Gen. Stat. § 97-25 (2009). From this Opinion and Award, Plaintiff appeals, challenging the adequacy of the evidence to support the Full Commission's findings of fact with regard to both issues: compensation for death and attendant care benefits.

## Standard of Review:

In reviewing a decision by the Industrial Commission, our Court's role "is limited to determining whether there is any competent evidence to support the findings of fact, and whether the findings of fact justify the conclusions of law." *Cross v. Blue Cross/Blue Shield*, 104 N.C. App. 284, 285-86, 409 S.E.2d 103, 104 (1991) (citation omitted). "The Commission's findings of fact are conclusive upon appeal if supported by competent evidence, even if there is evidence to support a contrary finding." *Kelly v. Duke Univ.*, 190 N.C. App. 733, 738, 661 S.E.2d 745, 748 (2008), *disc. review denied*, 363 N.C. 128, 675 S.E.2d 367 (2009) (citation omitted). On appeal, this Court "does not have the right to weigh the evidence and decide the issue on the basis of its weight[;] [t]he court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998),

IN RE ESTATE OF GAINEY v. SOUTHERN FLOORING & ACOUSTICAL CO.

[211 N.C. App. 233 (2011)]

*reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999) (quotation omitted). " 'The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony.' " *Id.*, 349 N.C. at 680, 509 S.E.2d at 413 (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965)). "[F]indings of fact by the Commission may [only] be set aside on appeal when there is a complete lack of competent evidence to support them[.]" *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000) (citation omitted).

"The Commission's conclusions of law are reviewed *de novo*." *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004) (citation omitted).

### I: Death from Occupational Disease

[1] In Plaintiff's first argument on appeal, she contends the Commission erred by concluding Decedent's asbestosis neither caused nor significantly contributed to Decedent's death.[2] Specifically, Plaintiff argues the Commission erred because "asbestosis was clearly a causative factor in the death of Decedent."

"For an injury or death to be compensable under our Workmen's Compensation Act it must be either the result of an accident arising out of and in the course of the employment or an occupational disease." *Booker v. Duke Medical Center*, 297 N.C. 458, 465, 256 S.E.2d 189, 194 (1979) (quotations omitted). Death benefits under the Workers' Compensation Act are governed by N.C. Gen. Stat. § 97-38, which states the following:

> If death results proximately from a compensable injury or occu-
> pational disease and within six years thereafter, or within two
> years of the final determination of disability, whichever is later,
> the employer shall pay or cause to be paid, subject to the provisions
> of other sections of this Article, weekly payments of compensa-
> tion equal to sixty-six and two-thirds percent (66 2/3%) of the
> average weekly wages of the deceased employee at the time of
> the accident, but not more than the amount established annually
> to be effective October 1 as provided in G.S. 97-29, nor less than

---

2. The parties agree the Commission has in prior orders determined that Decedent's asbestosis arose out of his employment; Decedent's asbestosis was a compensable occupational disease; Decedent was totally and permanently disabled, and his asbestosis was a significant contributing factor in his disability. The sole question on appeal with regard to Plaintiff's first argument is whether the Commission erred by concluding that Decedent's asbestosis neither caused nor significantly contributed to Decedent's death.

238 IN THE COURT OF APPEALS

IN RE ESTATE OF GAINEY v. SOUTHERN FLOORING & ACOUSTICAL CO.

[211 N.C. App. 233 (2011)]

thirty dollars ($30.00), per week, and burial expenses not exceeding three thousand five hundred dollars ($3,500)[.]

N.C. Gen. Stat. § 97-38.

In asbestosis cases, the question of whether a decedent receives death benefits pursuant to N.C. Gen. Stat. § 97-38 depends upon whether "[the decedent's compensable] asbestosis either caused or significantly contributed to his . . . death[.]" *Payne v. Charlotte Heating & Air Conditioning*, 172 N.C. App. 496, 509, 616 S.E.2d 356, 365 (2005).

The question of whether Decedent's occupational disease caused or significantly contributed to Decedent's death was determined in this case through the testimony of expert witnesses. "In cases involving complicated medical questions, only an expert can give competent opinion testimony as to the issue of causation." *Kelly*, 190 N.C. App. at 739, 661 S.E.2d at 748 (citing *Click v. Freight Carriers*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980)). "Where, as here, medical opinion testimony is required, 'medical certainty is not required, [but] an expert's speculation is insufficient to establish causation.' " *Kelly*, 190 N.C. App. at 739, 661 S.E.2d at 748 (quoting *Holley v. ACTS, Inc.*, 357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003)). The Supreme Court has stated that " '[t]he evidence must be such as to take the case out of the realm of conjecture and remote possibility[.]' " *Holley*, 357 N.C. at 232, 581 S.E.2d at 753 (2003) (citing *Gilmore v. Hoke Cty. Bd. of Educ.*, 222 N.C. 358, 365, 23 S.E.2d 292, 296 (1942)). "We acknowledge that the 'mere possibility of causation,' as opposed to the 'probability' of causation, is insufficient to support a finding of compensability." *Whitfield v. Lab. Corp.*, 158 N.C. App. 341, 351, 581 S.E.2d 778, 785 (2003) (quoting *Swink v. Cone Mills, Inc.*, 65 N.C. App. 397, 398, 309 S.E.2d 271, 272 (1983)).

In the case *sub judice*, the Commission found as fact the following:

1.  As of the date of his death, May 9, 2005, Decedent-Employee was 70 years old. Decedent-Employee was employed by defendant-employer, Southern Flooring and Acoustical Company from 1969 to 1983. The Commission previously found that decedent-employee contracted severe and disabling asbestosis from his employment with defendant-employer.

2.  Decedent-Employee was also diagnosed with cirrhosis of the liver as a result of Hepatitis, which is not related to his employment.

IN RE ESTATE OF GAINEY v. SOUTHERN FLOORING & ACOUSTICAL CO.

[211 N.C. App. 233 (2011)]

. . . .

4. Decedent-Employee's death certificate identified cirrhosis as the "immediate cause" of death and listed hepatitis-B, asbestosis and COPD as conditions "leading to immediate cause[.]"

5. In the months immediately preceding Decedent-Employee's death, his cirrhosis of the liver rapidly worsened. During 2005, Decedent-Employee had end-stage liver disease, his condition being at Stage 4, or the worst stage of the disease, with greater than 90 percent loss of liver function.

. . . .

8. Although the May 3, 2005 discharge summary did reference the asbestosis, the summary did not describe any resulting effect of the asbestosis on Decedent-Employee's overall health. Instead, at that time, the focus of the medical treatment appears to have been on the cirrhosis of the liver and the complications resulting therefrom, and on reducing Decedent-Employee's discomfort during his final illness. The summary also noted that Decedent-Employee had been referred for hospice services two days before his May 1, 2005 hospital admission.

9. . . . [T]he record from May 3, 2005, just prior to Decedent-Employee's death, did not make any mention of any lingering upper respiratory illness or complication from asbestosis.

10. On March 7, 2005, the results of a CT scan without contrast of the chest indicated stable lung findings compared to a test done the year before. However, the results also indicated increasing abdominal ascites, which is fluid build-up in the abdomen due to a failing liver.

11. Dr. Clements is a board-certified gastroenterologist who began seeing Decedent-Employee for his hepatitis-B in December of 2000 and treated Decedent-Employee through his final clinic visit on April 5, 2005, at which time Decedent-Employee was "very ill." Dr. Clements signed the death certificate. As he testified, Decedent-Employee's liver condition was the primary cause of his death.

12. As Dr. Clements further testified, while asbestosis was a portion of Decedent-Employee's general demise over time, the

240          IN THE COURT OF APPEALS

IN RE ESTATE OF GAINEY v. SOUTHERN FLOORING & ACOUSTICAL CO.

[211 N.C. App. 233 (2011)]

acute demise at the end was due to the progression of the liver disease. As Dr. Clements further testified, Decedent-Employee did not have a big pulmonary demise at the end. While asbestosis was, in Dr. Clements' estimation, "one of the portions that were involved with (Decedent-Employee's) death," Dr. Clements found it "hard, really, to differentiate" the contribution of asbestosis to Decedent-Employee's overall condition at his death.

13. Dr. Clements testified that he would yield to a pulmonologist as to the overall contribution that asbestosis had in Decedent-Employee's death.

14. Dr. Alford, a board-certified pulmonologist to whom Decedent-Employee was referred by his primary care physician, saw Decedent-Employee just twice before his death. As Dr. Alford testified, the asbestosis caused *cor pulmonale*, or right heart failure, in Decedent-Employee, which can lead to death.

15. As of Decedent-Employee's second visit to Dr. Alford, on February 14, 2005, his pulmonary symptoms had improved somewhat from the month before. Decedent-Employee had reduced his Bumex doses and was using oxygen only intermittently, and his *cor pulmonale* was not as dominant or debilitating as it had been at the previous visit.

16. Dr. Alford did not know the details of Decedent-Employee's death, and he was unaware that Decedent-Employee had end-stage cirrhosis, which by itself can cause death. While Dr. Alford testified that he "would not be surprised to know that asbesto[sis] . . . and right heart failure, more specifically, was a definite factor in (Decedent-Employee's) death," he also acknowledged that he did not have enough details from the death certificate to know exactly how Decedent-Employee died.

17. Dr. Surdulescu, a board-certified pulmonologist to whom Decedent-Employee was referred by his counsel, in December of 2004 stated that he could not comment on the cause of Decedent-Employee's death. When asked directly whether asbestosis had contributed to Decedent-Employee's death, Dr. Surdulescu testified, "It's hard to tell—asbestosis, in conjunction with some other problems, maybe." Dr. Surdulescu further testified that the inclusion of asbestosis on the death certificate was not "surprising" to him.

IN RE ESTATE OF GAINEY v. SOUTHERN FLOORING & ACOUSTICAL CO.

[211 N.C. App. 233 (2011)]

18. Dr. Vorwald, a board-certified family physician who was Decedent-Employee's primary physician, last saw Decedent-Employee on February 4, 2005. He did not treat Decedent-Employee during the three-month period prior to his death and did not review Decedent-Employee's medical records for that period. Although Dr. Vorwald testified that asbestosis was a significant contributing factor in Decedent-Employee's death, he had a limited basis for offering an opinion as to the cause of death. In fact, Dr. Vorwald testified that the physicians who were treating Decedent-Employee near the time of his death were in a better position to determine the factors that were significant in Decedent-Employee's death.

19. Based upon a careful review of the medical evidence of record, the Full Commission assigns greater weight to the testimony of Dr. Clements than to that of Dr. Vorwald, because Dr. Clements specializes in the field of abdominal disorders and treated Decedent-Employee much closer to his death than did Dr. Vorwald. The Full Commission also finds the testimony of Drs. Vorwald, Alford and Surdulescu regarding the contribution of asbestosis to Decedent-Employee's death to have been speculative, particularly the testimony to the effect that the witnesses would not have been "surprised" if it was a significant contributor. Dr. Clements yielded to a pulmonologist on the question of the level of contribution of the asbestosis to Decedent-Employee's death, but neither pulmonologist effectively testified that asbestosis was a significant contributing factor in Decedent-Employee's death. Finally, the Full Commission notes that Dr. Benson, who was apparently the last physician to examine Decedent-Employee while he was alive, was not deposed.

Based on the foregoing findings of fact, the Commission concluded the following, and rendered the Award accordingly:

1. Plaintiff has not carried its burden to show that Decedent-Employee's death proximately resulted from his compensable asbestosis. The findings do not support a conclusion that asbestosis was more likely than not a significant contributing factor in Decedent-Employee's death or that asbestosis more likely than not accelerated Decedent-Employee's death. As such, Plaintiff's claim for compensation for death under N.C. Gen. Stat. §97-38 must fail.

IN RE ESTATE OF GAINEY v. SOUTHERN FLOORING & ACOUSTICAL CO.

[211 N.C. App. 233 (2011)]

. . . .

1.  Plaintiffs claim for compensation for death under N.C. Gen. Stat. § 97-38 must under the law be, and is hereby, DENIED.

Dr. Clements gave the following testimony, which we must review to determine whether "[t]he Commission's findings of fact are . . . supported by competent evidence[.]" *Kelly*, 190 N.C. App. at 738, 661 S.E.2d at 748. If the findings of fact are supported by competent evidence, they are conclusive upon appeal, "even if there is evidence to support a contrary finding." *Id.*

Q:  Do you have an opinion as to whether his respiratory—his pulmonary problems were contributing to that overall disability?

A:  I would have to say that he did have lung—that's not my area of expertise, but he did have some pulmonary—you know, pulmonary disease related as well. So I cannot say that it did not, but his main symptoms . . . were confusion. He did have some shortness of breath, but he had his belly full of fluid as well. So, yeah it's kind of hard to differentiate when you are having some shortness of breath symptoms and confused. But I would—I would say that it at least played some part in his—in his disease state.

. . . .

Q:  Okay. As we sit here today, does it remain your opinion that asbestosis was a causative factor in Mr. Gainey's death?

A:  I think it was one of the portions that were involved with his—with his death.

Q:  Okay. And, when you—and this may be an impossible question to answer. But, when you say "one of the portions," how do you mean that?

A:  Well, I think that he had—you know, when you have advanced liver disease and confusion, and we're bringing back therapy and shortness of breath, and he had so many other items going on at the same time, it's really—you know, it's a big global picture, and there's all the different pieces. And what pieces is prominent at the end of life, when he's advanced, and you're withdrawing therapy and things, it's hard to—it's hard, really, to differentiate between those two completely.

IN RE ESTATE OF GAINEY v. SOUTHERN FLOORING & ACOUSTICAL CO.

[211 N.C. App. 233 (2011)]

. . . .

Q:  And as far as the—as far as the cause of death itself, would you say the liver failure was the—was the primary cause of death?

A:  Yes, I would.

. . . .

Q:  And I'm not really looking for a percentage, but I'm just trying to get some kind of feel for whether or not you feel like the asbestosis was, you know, a significant contributing factor.

A:  I think it was—I shouldn't say—I'm using too many words. I think it was a portion of his general demise over time. I think it was a portion of his general demise. And, when you have an organ system that's not working, it puts more stress on other systems that are involved with, you know, hepatitis. And so overall I think it was involved. The acute demise at the end, I don't think he had a big pulmonary demise. I think it was more progression of the liver disease.

. . . .

Q:  Doctor, in terms of the extent of Mr. Gainey's shortness of breath, the cause of it and how severe the asbestosis was and its overall contribution to Mr. Gainey's death, would you yield to a pulmonologist?

A:  Yes, 100 percent. . . .

As the Full Commission found as fact, Dr. Clements testified that Decedent's liver condition was the primary cause of Decedent's death; specifically Dr. Clements said "the acute demise at the end" was due to the "progression of the liver disease." Dr. Clements further described Decedent's asbestosis in the following manner: asbestosis was "some part in his . . . disease state"; "one of the portions that were involved with his . . . death"; "a portion of his general demise over time"; and "I don't think he had a big pulmonary demise" at the end of Decedent's life, but asbestosis was "involved." We believe that Dr. Clements' testimony certainly supports and tends to show that asbestosis was a factor in Decedent's death, but the question before the Full Commission was whether "asbestosis either caused or significantly contributed to [Decedent's] . . . death[.]" *Payne*, 172 N.C. App. at 509, 616 S.E.2d at 365. We believe Dr. Clements' testimony supports the Commission's findings, and in turn

IN RE ESTATE OF GAINEY v. SOUTHERN FLOORING & ACOUSTICAL CO.

[211 N.C. App. 233 (2011)]

it's conclusion, that asbestosis did not significantly contribute to Decedent's death. Dr. Clements' testimony provides competent evidence to support the challenged findings, and therefore, the findings of fact are conclusive on appeal. Although there was arguably evidence of record contrary to Dr. Clements' testimony, in the form of testimony by other physicians, "[t]he Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Adams*, 349 N.C. at 680, 509 S.E.2d at 413 (citation omitted). The Commission did not err by giving more weight to the testimony of Dr. Clements than to the testimony of other physicians; nor did the Commission err by concluding that evidence in the form of testimony that a physician "would not be surprised to know that asbesto[sis]" contributed to Decedent's death was speculative. On appeal, this Court "does not have the right to weigh the evidence and decide the issue on the basis of its weight[;] [t]he court's duty goes no further than to determine whether the record contains any evidence tending to support the finding[s]." *Adams*, 349 N.C. at 681, 509 S.E.2d at 414 (1998) (citation omitted). As such, we conclude that the challenged findings of fact are supported by Dr. Clements' testimony, and the findings of fact, in turn, support the conclusion of law that Decedent's asbestosis did not cause or significantly contribute to Decedent's death. Therefore, we affirm the Full Commission's conclusion that Decedent's death is not compensable pursuant to N.C. Gen. Stat. § 97-38.

## II: Attendant Care Compensation

[2] In Plaintiff's second and final argument on appeal, she contends the Full Commission erred by concluding there was "insufficient competent medical evidence to establish that attendant care was reasonable and necessary as a result of Decedent-Employee's compensable asbestosis." We conclude the Commission acted under a misapprehension of law.

"Whether a plaintiff does or does not receive attendant care benefits is a conclusion of law which must be supported by findings of fact." *Ruiz v. Belk Masonry Co.*, 148 N.C. App. 675, 679, 559 S.E.2d 249, 252, *disc. review denied*, 356 N.C. 166, 568 S.E.2d 610 (2002). "On an appeal from an opinion and award from the Commission [regarding attendant care benefits], the standard of review for this Court 'is limited to a determination of (1) whether the Commission's findings of fact are supported by any competent evidence in the record; and (2) whether the Commission's findings justify its conclusions of law." *Id.*, 148 N.C. App. at 679-80, 559 S.E.2d at 252-53 (quoting *Goff v. Foster Forbes Glass Div.*, 140 N.C. App. 130, 132-33, 535 S.E.2d 602, 604 (2000)).

IN RE ESTATE OF GAINEY v. SOUTHERN FLOORING & ACOUSTICAL CO.

[211 N.C. App. 233 (2011)]

"The Commission's conclusions of law are reviewed *de novo*." *McRae*, 358 N.C. at 496, 597 S.E.2d at 701. "If the conclusions of the Commission are based upon a . . . misapprehension of the law, the case should be remanded so 'that the evidence [may] be considered in its true legal light.' " *Chambers v. Transit Mgmt.*, 360 N.C. 609, 611, 636 S.E.2d 553, 555 (2006), *rehearing denied*, 361 N.C. 227, 641 S.E.2d 801 (2007) (quoting *Clark v. Wal-Mart*, 360 N.C. 41, 43, 619 S.E.2d 491, 492 (2005)).

N.C. Gen. Stat. § 97-25 provides that "[m]edical compensation shall be provided by the employer." N.C. Gen. Stat. § 97-2(19) defines the term "medical compensation":

> The term "medical compensation" means medical, surgical, hospital, nursing, and rehabilitative services, and medicines, sick travel, and *other treatment*, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability; and any original artificial members as may reasonably be necessary at the end of the healing period and the replacement of such artificial members when reasonably necessitated by ordinary use or medical circumstances.

N.C. Gen. Stat. § 97-2(19) (Emphasis added).

In the case *sub judice*, the Commission made the following findings of fact with regard to the issue of whether Decedent was entitled to receive attendant care benefits:

20. From November 2004 through January 2005, decedent-employee was unable to do some of the things that he normally would perform on his own. As a result, his wife, Brenda Gainey, began assisting decedent-employee around the house for approximately 6 hours per day. From January 2005 to March 2005, decedent-employee's wife and daughter, Wendy Shackleton, increased their assistance to 10 hours per day.

21. In March 2005, decedent-employee's health began to deteriorate significantly. In April 2005, Brenda Gainey hired an individual named Judy Norris to assist in taking care of Decedent-Employee. Ms. Norris spent approximately 18 hours per day tending to decedent-employee's needs. Ms. Norris' qualifications and the amount of money paid for her services are unknown.

246 IN THE COURT OF APPEALS

IN RE ESTATE OF GAINEY v. SOUTHERN FLOORING & ACOUSTICAL CO.

[211 N.C. App. 233 (2011)]

22. From March 2005 until his death, decedent-employee's family, with the assistance of Ms. Norris and Hospice, provided 24-hour supervision and care.

23. On February 4, 2005, Dr. Frederick Vorwald examined decedent-employee. At the time of the examination, Dr. Vorwald noted that that decedent-employee rarely left the house, but that he appeared capable of dressing and showering himself.

24. In February 2005, Dr. Alford examined decedent-employee for the last time prior to his death. Dr. Alford, who specializes in pulmonary and critical care medicine, noted that decedent-employee was clinically doing somewhat better. . . . Dr. Alford did not prescribe attendant care for decedent-employee, nor did he testify that attendant care was necessary due to the progression of decedent-employee's asbestosis.

25. On April 5, 2005, Dr. John Clements, who was treating decedent-employee for his end-stage [li]ver disease, provided his last treatment for decedent-employee. At that time, decedent-employee was suffering from ascites and was in a state of confusion, which made him incapable of tending to his own needs. The confusion was a result of elevated ammonia building up due to the advanced stage of his liver disease. Dr. Clement[s] was unable to attribute asbestosis as the cause of decedent-employee's incapacity. In Dr. Clement[s'] opinion, decedent-employee's confusion was paramount in his incapacity and that his mental state was a result of his liver failure.

26. Decedent-Employee's treating pulmonologist, Dr. Sever Surdulescu, last examined him in December 2004. At that time, decedent-employee exhibited a lack of energy to walk. Dr. Surdulescu stated that the cause of the lack of energy could be either his asbestosis or his cirrhosis or a combination of the two serious diseases. When questioned whether it was reasonable that decedent-employee would need help around the house in 2005, Dr. Surdulescu, the treating pulmonologist, responded "[i]t's possible, but I don't remember."

27. The greater weight of the competent medical evidence *fails to establish that any physician prescribed attendant medical care for Decedent-Employee.* The greater weight of the competent medical evidence also fails to establish that Decedent-Employee's incapacity to care for himself was the result of his compensable asbestosis. (Emphasis added).

IN RE ESTATE OF GAINEY v. SOUTHERN FLOORING & ACOUSTICAL CO.

[211 N.C. App. 233 (2011)]

Based on these findings of fact, the Full Commission made the following conclusion of law and entered the following award:

> 2. An injured employee is entitled to receive reasonable and necessary medical services and other treatment as may reasonably be required to effect a cure or give relief. N.C. Gen. Stat. §§ 97-2(19), 97-25. Attendant care services can be compensable under the Act if the treatment provided is reasonable and necessary. In determining whether the attendant care is reasonable and necessary, the *competent medical evidence must show that a physician has prescribed attendant care as a necessary result of the accident. The physician must also describe with a reasonable degree of particularity the nature and extent of the duties to be performed as attendant care. Leathers v. City Coach Lines, Inc.,* I.C. File Number 972686, Full Commission Opinion and Award filed March 18, 2002. There is insufficient competent medical evidence to establish that attendant care was reasonable and necessary as a result of Decedent-Employee's compensable asbestosis. Plaintiffs claim for attendant care should be denied. N.C. Gen. Stat. §§ 97-2(19); 97-25. (Emphasis added).

> .. . . .

> 2. Plaintiffs claim for attendant care services must under the law be, and is hereby, DENIED.

The Full Commission cites only *Leathers v. City Coach Line Inc.,* I.C. File Number 972686, which is a Full Commission Opinion & Award filed 18 March 2002, for the legal proposition that "competent medical evidence must show that a physician has prescribed attendant care as a necessary result of the accident[;] [t]he physician must also describe with a reasonable degree of particularity the nature and extent of the duties to be performed as attendant care." Defendants argue on appeal that a treating physician must prescribe attendant care in order for attendant care to be compensable, but Defendants cite only *Leathers,* and no other legal authority, for this proposition.

*Leathers* states the following:

> In determining this question, the Commission finds persuasive the guidance of the Virginia Supreme Court and several other jurisdictions that have used the following four-point standard to determine whether attendant care is reasonable and necessary treatment:

IN RE ESTATE OF GAINEY v. SOUTHERN FLOORING & ACOUSTICAL CO.

[211 N.C. App. 233 (2011)]

... [T]he employer must pay for the care when it is performed by a spouse, if (1) the employer knows of the employee's need for medical attention at home as a result of the industrial accident; (2) the medical attention is performed under the direction and control of a physician, that is, a physician must state home nursing care is necessary as a result of the accident and must describe with a reasonable degree of particularity the nature and extent of duties to be performed by the spouse; (3) the care rendered by the spouse must be of the type usually rendered only by trained attendants and beyond the scope of normal household duties; and (4) there is a means to determine with proper certainty the reasonable value of the services performed by the spouse.

*Warren Trucking Co. v. Chandler*, 221 Va. 1108, 277 S.E.2d 488 (1981).

After the Full Commission purportedly adopted this four-part test for awarding attendant care benefits, the Commission in *Leathers* then cited a series of other jurisdictions, including Massachusetts, Minnesota, Montana, New Mexico, and Arkansas, for propositions of law related to the *Warren Trucking* four-part test.

While the test set forth in *Leathers* is a correct statement of Virginia law, we find no such holding in the opinions of this Court or the Supreme Court of this State. The Full Commission's interpretation of the statute governing attendant care benefits in *Leathers* is not binding on this Court. *See Brooks v. McWhirter Grading Co.*, 303 N.C. 573, 581, 281 S.E.2d 24, 29 (1981) ("Although the interpretation of a statute by an agency created to administer that statute is traditionally accorded some deference by appellate courts, those interpretations are not binding" (quotation omitted)).

Although the courts in Virginia, Kentucky, Minnesota, Montana, New Mexico, and Oklahoma have adopted either the four-part test in *Warren Trucking* or a similar modified test, courts in other jurisdictions have adopted a less restrictive test. When asked on appeal to adopt the *Warren Trucking* test, the Supreme Courts of Arizona and Vermont considered and rejected the application of the four-part test, favoring a "flexible case-by-case approach" and renouncing the "rigid framework" of the four-part test, stating that it "[did] not further the remedial purposes of workers' compensation statutes[.]" *Close v. Superior Excavating Co.*, 166 Vt. 318, 324, 693 A.2d 729, 732 (1997) (stating that "we do not believe that [*Warren Trucking's*] rigid frame-

IN RE ESTATE OF GAINEY v. SOUTHERN FLOORING & ACOUSTICAL CO.

[211 N.C. App. 233 (2011)]

work is necessary to decide these cases[;] [t]he Commissioner, aware of *Warren Trucking*, similarly chose to adopt a more flexible case-by-case approach[;] . . . [a]dopting such a test would also conflict with our longstanding practice of construing the workers' compensation statute liberally"); *see also Carbajal v. Indus. Comm'n*, 223 Ariz. 1, 4, 219 P.3d 211, 214 (2009) (concluding, "as the Vermont Supreme Court did, that *Warren Trucking's* rigid framework does not further the remedial purposes of workers' compensation statutes[,]" and "[u]nder Arizona law, compensability turns on the nature of the services, not on the identity of the provider").[3]

This Court has previously upheld awards from the Industrial Commission contrary to the proposition that a physician's prescription is required for an award of attendant care benefits. *See Ruiz*, 148 N.C. App. at 680-81, 559 S.E.2d at 253 (holding that attendant care compensation was properly awarded when the claimant's brother testified and a life care planner, not a physician, "drafted a life care plan for [the claimant] . . . indicat[ing] that [the claimant] would need attendant care for the remainder of his life" even though the claimant's treating physician stated "that [claimant] has improved steadily, [claimant] can remain at home unattended, and vocational rehabilitation would be appropriate for [claimant]"); *London v. Snak Time Catering*, 136 N.C. App. 473, 479, 525 S.E.2d 203, 207 (2000) (Award upheld when the claimant's wife testified, and a life care planning specialist opined, that the claimant was in need of twenty-four hour per day attendant care; although a physician testified, there was no mention of a physician's "prescription" for attendant care, and his testimony was not included in the Court's enumeration of "findings of fact [that] are relevant to the Commission's conclusions of law" that claimant was entitled to attendant care benefits); *Godwin v. Swift & Co.*, 270 N.C. 690, 694, 155 S.E.2d 157, 160 (1967) (The testimony of the "business manager of the Friendly Elm Nursing Home" and the claimant's brother, without mention of the claimant's treating physician, was sufficient to "support the finding that" attendant care "was reasonably necessary for the welfare of the claimant").

---

3. We also note that the statutes governing medical compensation in Arizona and Vermont are similar to the North Carolina statute. In Arizona, ARIZ. REV. STAT. § 23-1062(a), states that "[p]romptly, upon notice to the employer, every injured employee shall receive medical, surgical and hospital benefits or other treatment[.] . . ." The Vermont statute provides benefits for "reasonable surgical, medical and nursing services." VT. STAT. ANN. tit. 21, § 640(a). Similarly, N.C. Gen. Stat. § 97-2(19) defines "medical compensation" as "medical, surgical, hospital, nursing, and rehabilitative services, and medicines, sick travel, and other treatment[.]"

IN RE ESTATE OF GAINEY v. SOUTHERN FLOORING & ACOUSTICAL CO.

[211 N.C. App. 233 (2011)]

Our Supreme Court's decisions pertaining to the construction of the Workers' Compensation Act further suggest that the Commission's requirement of a physician's prescription in this case was too restrictive. *See Keller v. Elec. Wiring Co.*, 259 N.C. 222, 225, 130 S.E.2d 342, 344 (1963) ("The Compensation Act requires that it be liberally construed to effectuate the objects for which it was passed—to provide compensation for workers injured in industrial accidents"); *see also Shaw v. U.S. Airways, Inc.*, 362 N.C. 457, 463, 665 S.E.2d 449, 453 (2008) (stating that "the Workers' Compensation Act should be liberally construed, whenever appropriate, so that benefits will not be denied upon mere technicalities or strained and narrow interpretations of its provisions" (quotation omitted)).

We believe the liberal construction of the Workers' Compensation Act suggests, and the prior decisions by our appellate courts require, that the test for attendant care be less restrictive than that imposed by the Full Commission in this case. *Dunn v. Pate*, 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993) (The Court of Appeals has "no authority to overrule decisions of [the] Supreme Court and [has] the responsibility to follow those decisions until otherwise ordered by the Supreme Court") (quotation omitted); *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36 (1989) ("[A] panel of the Court of Appeals is bound by a prior decision of another panel of the same court addressing the same question, but in a different case, unless overturned by an intervening decision from a higher court").

For the foregoing reasons, we decline to adopt the four-part test set forth in *Warren Trucking*.[4] The law of this State does not support an approach in which a physician's prescription is the sole evidence upon which the question of attendant care compensation hinges. Instead, we explicitly adopt what we believe has already been the practice in North Carolina—a flexible case-by-case approach in which the Commission may determine the reasonableness and medical necessity of particular attendant care services by reviewing a variety of evidence,[5] including but not limited to the following: a prescription

---

4. We further note that the proposition of law set forth by the Full Commission in this case is even more restrictive than *Warren Trucking*: The Commission required that a "physician has *prescribed* attendant care[,]" while *Warren Trucking* only requires that "a physician must state home nursing care is necessary[.]"

5. With regard to the evidentiary considerations associated with attendant care benefits, American Jurisprudence states the following: "The reasonableness and medical necessity of particular attendant care services can be established by a prescription or a report of a healthcare provider, through the testimony of the claimant or family member, or by the very nature of the injury itself. The testimony of the claimant may, depending

or report of a healthcare provider; the testimony or a statement of a physician, nurse, or life care planner; the testimony of the claimant or the claimant's family member; or the very nature of the injury.[6]

Since neither this Court nor the North Carolina Supreme Court has adopted the "four-part" test in *Leathers* for the determination of whether "attendant care is reasonable and necessary[,]" the Commission's requirement that a physician's prescription is a prerequisite to attendant care compensation constitutes a misapprehension of law. "If the conclusions of the Commission are based upon a . . . misapprehension of the law, the case should be remanded so 'that the evidence [may] be considered in its true legal light.' " *Chambers*, 360 N.C. at 611, 636 S.E.2d at 555; *see also Holley*, 357 N.C. at 231, 581 S.E.2d at 752. "When the Commission acts under a misapprehension of the law, the award must be set aside and the case remanded for a new determination using the correct legal standard." *Ballenger v. ITT Grinnell Industrial Piping, Inc.*, 320 N.C. 155, 158, 357 S.E.2d 683, 685 (1987) (concluding that the Commission's opinion set out an incorrect standard and remanding to the Commission for new findings of fact and conclusions of law applying the correct legal standard). Because the Commission's requirement in this case, that a physician's prescription is a prerequisite to attendant care compensation, constitutes a misapprehension of law, we remand the portion of the Opinion & Award denying attendant care benefits to the Commission for new findings of fact and conclusions of law applying the standard enumerated in this opinion. The remainder of the Commission's Opinion & Award is affirmed.

AFFIRMED, in part, REVERSED and REMANDED, in part.

Chief Judge MARTIN and Judge ROBERT C. HUNTER concur.

---

on the particular circumstances, be sufficient to establish the compensability of the attendant care services that were rendered. Testimony of the claimant's wife or other family member who rendered the services, the treating physician, and the nurses who provided in-hospital care would also be helpful on that issue." 7 Am. Jur. 3d *Proof of Facts* 143 § 12 (1990).

6. *See Ruiz*, 148 N.C. App. 675, 559 S.E.2d 249; *London*, 136 N.C. App. at 479, 525 S.E.2d at 207; *Godwin*, 270 N.C. at 694, 155 S.E.2d at 160; *Boylan v. Verizon Wireless*, —— N.C. App. ——, ——, 685 S.E.2d 155, 160 (2009), *disc. review denied*, 363 N.C. 853, 693 S.E.2d 918 (2010) (Evidence sufficient when a rehabilitative nurse opined that "due to her current physical condition, [the] Plaintiff needs some level of assistance in the performance of her daily living activities"); *Levens v. Guilford County Schs.*, 152 N.C. App. 390, 396, 567 S.E.2d 767, 771 (2002) (concluding that "the Commission did not err in ordering that . . . the details of any new home construction or remodeling should be governed by 'reasonableness and medical necessity,' without specifically ordering that [the claimant's treating physician's] specifications be followed").