LINDA D. VAUGHN v. NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES

No. 7710IC568

(Filed 11 July 1978)

1. State § 10— tort claim — interlocutory order — no appeal

No right of appeal lies from an interlocutory order of the Industrial Commission. Review is by writ of certiorari only. G.S. 7A-29.

2. State § 10— review of findings of Industrial Commission

A finding of fact by the Industrial Commission is binding on appeal if it is supported by any competent evidence.

3. Principal and Agent § 1— essentials of principal-agent relationship

There are two essential ingredients in the principal-agent relationship: (1) authority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent.

4. State § 6— Tort Claims Act—foster home program—county director of social services—agent of State

The director of a county department of social services was acting as an agent of the State Social Services Commission of the Department of Human Resources in administering a foster home program funded by the State Foster Home Fund, although he was an employee of the county, since (1) the county director was required by G.S. 108-19(3) to "administer" the Foster Home Fund in the county; (2) G.S. 108-19(5) required the county director to act as an "agent" of the State Commission in work required by the Commission in the county; (3) the State controlled half of the members of the county board of social services which selected the county director; and (4) the State Commission, pursuant to G.S. 108-66, controlled and regulated the county director's actions in administering the foster home program. Therefore, the State would be liable under the Tort Claims Act for the negligence of the director or his sub-agents in the placement of a child in a foster home under a program funded by the State Foster Home Fund, and the Industrial Commission had jurisdiction of a claim based on such alleged negligence.

ON writ of certiorari to review order of North Carolina Industrial Commission entered 3 February 1977. Heard in the Court of Appeals 5 April 1978.

Claimant filed a claim against the Department of Human Resources with the Industrial Commission 11 December 1975 alleging injury resulting from negligence. In her accompanying affidavit, she stated that a foster child, James R. Mason, was placed in her home by the Durham County Department of Social Services. The child was a carrier of cytomegalo virus. Cytomegalo virus causes birth defects in the children of women infected during pregnancy. The employees of the Durham County Department of Social Services knew that she was attempting to become pregnant. Claimant subsequently became pregnant. She was infected with cytomegalo virus. Because of the high risk that the viral infection would cause birth defects in her unborn child, claimant was forced to abort her pregnancy. This abortion has resulted in economic, physical, and emotional injury.

The Department moved to dismiss the claim alleging that the employees of the Durham County Department of Social Services were not the agents of the Department. Counsel stipulated at the hearing that the alleged agents were actually employees of the Durham County Department of Social Services. Commissioner Stephenson conducted two hearings at which testimony was taken. He found the following facts:

"1. The Durham County Board of Social Services consists of three members; one appointed by the Durham County Commissioners, one by the North Carolina Social Services Commission, and the third selected later by the first two. Members of the Board are paid according to statute.

2. One of the statutory duties of the County Board of Social Services is the appointment of a County Director of Social Services. The County Director's salary is determined in accordance with the classification plan of the State Personnel Board. His salary is paid out of a combination of federal, state and county funds.

3. Thomas W. Hogan has been Director of the Durham County Department of Social Services since May, 1971. He was hired, in accordance with North Carolina law, by the County Board of Social Services. His duties are enumerated in N.C. G.S. 108-19. Among these duties are to administer State programs in accordance with Social Services Commission rules and regulations, to administer funds, to appoint necessary

personnel, to act as agent for the State in relation to work required by the Social Services Commission, and to accept children for placement in foster homes and to supervise those placements.

4. Durham County Department of Social Services staff members are selected, according to law, in accordance with the merit system (rules) of the State Personnel Board. These employees are hired, fired and supervised by the County Director.

5. Among the responsibilities of the Durham County Director of Social Services is the administration of a foster home program. The administration of this program involves the selection of foster homes pursuant to regulations issued by the State Social Services Commission, the inspection of those homes by County staff, and the submission of selected homes to the State Social Services Commission for licensing by the Secretary of Human Resources in accordance with departmental standards. Children who are placed in licensed homes receive funds in their behalf; whereas those children in unlicensed homes do not receive such funds.

6. There are two ways the foster care is funded. The first is through the federal Aid to Families with Dependent Children program (AFDC). If care is funded in this way, the federal AFDC manual, containing federal requirements and policies, is followed by the County staff. The second type of funding, used for the foster care in this case, is the State Foster Home Fund. When funded in this way, the Welfare Programs Division Manual, Chapter IV, 'Foster Care Services,' prepared by the State Social Services Commission, is used by the County staff. In this manual is contained State policies pertaining to foster home care.

7. Created by N.C. G.S. 108-23 and 108-66, the State Foster Home Fund is a program which is administered by the County Departments of Social Services under Rules and regulations adopted by the State Social Services Commission and under the supervision of the Department of Human Resources. By statute, participation in this program is not optional, as is participation in other programs.

8. By statute, when a County Director of Social Services is involved in work required by the Social Services Commission, he acts as an agent of that Commission. Hence, when administering the State Foster Home Fund, Thomas Hogan acted as an agent for the Social Services Commission of the Department of Human Resources."

Commissioner Stephenson's conclusions of law were that Thomas Hogan, Gladys Johnson, Ann Tietz, Cobb Fox, Gertrude Boone, and Marjorie Echols, the named employees of the Durham County Department of Social Services, were agents of the North Carolina Department of Human Resources and that the Industrial Commission has jurisdiction to hear the claim.

The Department appealed to the full Commission. The Industrial Commission adopted the opinion of Commissioner Stephenson. The interlocutory order of the Commission is before this Court on writ of certiorari.

*Powe, Porter, Alphin & Whichard, by Charles R. Holton, for the claimant.*

*Attorney General Edmisten, by Assistant Attorney General Ralf F. Haskell, for the State.*

MORRIS, Judge.

[1]   This case came before this Court styled as an appeal. No appeal lies from an interlocutory order of the Industrial Commission. There is a *right of appeal* only from a *final order*. G.S. 7A-29. In the intersts of judicial economy, we have treated the "appeal" as a petition for writ of certiorari and have granted the same.

[2]   The Department has excepted to every one of the Commission's findings of fact. A finding of fact by the Industrial Commission is binding on appeal if it is supported by any competent evidence. *Crawford v. Board of Education*, 3 N.C. App. 343, 164 S.E. 2d 748 (1968), *affirmed* 275 N.C. 354, 168 S.E. 2d 33 (1969). We have thoroughly reviewed the evidence introduced in the two hearings. We have found competent evidence to support every finding of fact save one. Assignments of error Nos. 2 through 8 are, therefore without merit.

The Commission found that the Durham County Board of Social Services consisted of three members; one appointed by the county commissioners, one appointed by the North Carolina Social Services Commission, and the third selected by the first two. This procedure is set out in G.S. 108-9(a). Contrary to the Industrial Commission's finding, the record indicates that the actual number of county board members is five. The selection, therefore, would have been pursuant to G.S. 108-9(b) with both the Social Services Commission and the county commissioners selecting two rather than one board member. We will not reverse the order of the Commission for harmless error. To warrant reversal, the error must be material and prejudicial. *Board of Education v. Lamm*, 6 N.C. App. 656, 171 S.E. 2d 48 (1969), *affirmed* 276 N.C. 487, 173 S.E. 2d 281 (1970). The error of which the Department complains is obviously harmless and does not warrant reversal because the procedure and proportion are the very same. Assignment of error No. 1 is overruled.

Assignments of error Nos. 9 through 15 focus upon one crucial question: Were Thomas Hogan, Director of the Durham County Department of Social Services, and his subordinates acting as agent and sub-agents for the State Social Services Commission in placing James Mason in the home of Linda Vaughn? Both parties acknowledge and concede that if Thomas Hogan was acting as agent for the Commission, then the other employees were also acting as agents under theories of sub-agency.

This case is before us to review the order of the Industrial Commission which held that it had jurisdiction to hear the claim. G.S. 143-291 is the jurisdictional statute. It provides that the Industrial Commission can hear claims based upon the "negligent act of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority . . . ." G.S. 143-291. The parties stipulated that Hogan was an employee of the county. There is no evidence to suggest that Hogan is either an officer or an involuntary servant. Thus, the remaining question is whether Hogan is an agent of the State. Additionally, we note that the claimant did not object to the Commission's holding that Hogan was not an employee of the State. If Hogan was acting as an agent of the State, the Industrial Commission does have jurisdiction to hear the claim; if not, then the Commission is without jurisdiction.

[3]  There are two essential ingredients in the principal-agent relationship: (1) Authority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent. *See Sharpe v. Bradley Lumber Company*, 446 F. 2d 152 (4th Cir. 1971), *cert. denied* 405 U.S. 919, 92 S.Ct. 946, 30 L.Ed. 2d 789 (1972); *Julian v. Lawton*, 240 N.C. 436, 82 S.E. 2d 210 (1954); Seavey, Handbook on the Law of Agency (1964), § 11, at 21. The agent must have authority to act on behalf of the principal. It would be manifestly unjust to hold one party liable for the actions taken by another person if that person did not have authority to act for him. Just as "authority" (or, as some courts have termed it, "appointment") justifies holding the principal liable, "control" is the element which distinguishes a true "agency" status from some other status such as that of a true independent contractor. The nature and degree of control which the principal exercises over the agent is often determinative of whether there is a principal-agent relationship. In the case of the "borrowed servant", for example, whether the acts of the "borrowed servant" create liability will depend upon "who has the primary right of control when the act is performed. . . ." Sell, Agency (1975), § 97, at 88.

[4]  In the present case, the Commission found that Hogan and the other named persons were agents simply because of the nomenclature used in the statute. G.S. 108-19(5) requires the county director to "act as agent of the Social Services Commission in relation to work required by the Social Services Commission in the county. . . ." G.S. 108-19(15) requires the county director to "accept children for placement in foster homes and to supervise placements for so long as such children require foster home care." The Commission concluded that since this duty was required work, the director was acting as "agent". The Department of Human Resources argues on appeal that accepting children for placement is work required by the legislature and that the director is, therefore, not an "agent". While the Commission's position could be sustained as it is, we believe that a more careful analysis strengthens the position taken.

We believe that the proper approach is to examine the realities of the situation as well as the nomenclature. We will first investigate the "authority" of the county director. As we noted above G.S. 108-19(5) requires him to "act as agent of the Social

Services Commission in relation to work required by the Social Services Commission in the county." Furthermore, G.S. 108-19(15) requires him to "accept children for placement in foster homes. . . ." G.S. 108-19(3) requires the county director to "administer programs of public assistance established by this Chapter. . . ." G.S. 108-66, in the same chapter, establishes the State Foster Home Fund. This program funded the placement of the child, James Mason, in the home of Linda Vaughn. We believe that these statutory provisions clearly demonstrate the authority of Director Hogan to act on behalf of the Commission.

The next question is whether the director's authority to act on behalf of the Commission encompassed the placement of James Mason in the home of Linda Vaughn. In investigating the authority of an agent, one must determine the scope of that authority. If an agent exceeds the scope of his authority, it is obvious that his act will not be binding upon his principal. *See Cordaro v. Singleton*, 31 N.C. App. 476, 229 S.E. 2d 707 (1976). The most restrictive interpretation of the director's authority which can be reasonably supported is that, under G.S. 108-19(3) and (5), the director acts as agent for the Social Services Commission in administering the State Foster Home Fund, set up under G.S. 108-66, in Durham County. The county director is required to administer the State Foster Home Fund since it is a program of public assistance established by Chapter 108. The statute also deems the director an "agent" in relation to work required by the Commission in the county.

The record reveals that placement of James Mason was administered as part of the State Foster Home Fund. Thus, the placement of James Mason was within the scope of the director's authority. The State argues that the State Foster Home Fund *is* merely a program to reimburse the county for monies expended and that placement is completely foreign to the program. The statute, however, states that the Fund was established "*for the purpose of providing assistance to needy children* who are placed in foster homes by county departments of social services in accordance with the rules and regulations of the Social Services Commission." (Emphasis added.) G.S. 108-66. The statute, thus, clearly establishes a direct link between the needy child and the Commission rather than the disjointed process suggested in the brief for the Department. Thus, we conclude that, in placing

James Mason in the home of Linda Vaughn, the director was act-
ing within the scope of his authority in administering the State
Foster Home Fund in Durham County.

We also agree with the Industrial Commission that the direc-
tor's duties in accepting children for placement in foster homes
are encompassed by G.S. 108-19(5) which requires the director to
act as "agent" for the State. We note that the record reveals that
a child who is denied foster services has the right to appeal that
denial to the State Division of Social Services. If the placement of
children in foster homes were not part of the work required by
the Commission of Social Services, such an appeal would be a vain
and meaningless act. If, on the other hand, placement were part
of the required work, it would be logical to have a right of appeal.
We do not think that such a determination is necessary to our
decision in this case. We think that even under the more restric-
tive interpretation of the director's authority discussed in the
preceding paragraph, there is ample evidence to support the con-
clusion that the director was acting within the scope of his
authority in the placement of James Mason.

The crucial question in this case is whether the Social Serv-
ices Commission had sufficient control over the director to sup-
port the conclusion that he was an "agent" of the State as that
term is used in G.S. 143-291. Where, as here, the parties have
stipulated that the director and other named parties were the
"employees" of the county, the element of "control" becomes
more important than usual. If the county alone controls these per-
sons, it is apparent that the county alone should be liable for
their acts. Conversely, if the State has control over these actions
in the placement of children in foster homes, then it is reasonable
to hold the State liable, under the Tort Claims Act, for the acts of
these officials.

First of all, we note that the actual authority to hire and
discharge the county director is vested in the county board of
social services. G.S. 108-15. The Commission does not have the
power to hire and discharge. The Commission does have indirect
control, however. Under G.S. 108-9(b), the Commission appoints.
two members of the county board. The power within the county
board is in precise balance between the State and the county. If
the four initial appointees on the board cannot agree on the fifth

member, that member is selected by the resident superior court judge, an independent judicial officer. We also note that the county board's authority to select and discharge is not unlimited. The county must select the county director "in accordance with the merit system rules of the State Personnel Board. . . ." G.S. 108-17(a). Additionally, any discharged director has "the right of appeal under the same rules." G.S. 108-17(a). Thus, the State is quite entangled in the hiring and discharge process.

A short review of the underlying history is quite revealing. Initially, the county commissioners selected the county board. Sess. Laws of 1917, chap. 170. In 1919, the State Board was given the power to select all members of the county board, but the county commissioners and county board of education, in joint session, selected and discharged the county superintendent (forerunner of the county director). Sess. Laws of 1919, chap. 46, sec. 3. This procedure was followed until 1941 when the present day process was adopted. It was at this same time that the county superintendent (now county director) was required to administer the State program for aid to dependent children (forerunner of the State Foster Home Fund) which was established in 1937. Sess. Laws of 1941, chap. 270; *see also* Sess. Laws of 1937, chap. 135, secs. 1-3. Thus, one can see that there is an historical pattern of State control and that as new duties were imposed, that control was increased.

We are aware that our courts have repeatedly held that the State is not liable under the Tort Claims Act for the actions of school officials. *See, e.g., Turner v. Board of Education*, 250 N.C. 456, 109 S.E. 2d 211 (1959). The Court has discussed the importance of the element of control. In *Turner v. Board of Education*, the Court noted that "the local boards select and hire the teachers, other employees and operating personnel. The local boards run the schools." 250 N.C. at 463, 109 S.E. 2d at 216. The real distinction between cases involving schools and the present case is the manner in which the local boards are selected. County and city school boards are entirely local in nature; the State is not involved in any manner in the selection of the board members. On the other hand, the State has absolute control over one-half of each county board of social services. The importance of that distinction is illustrated in *Assurance Co. v. Gold, Comr. of Insurance*, 248 N.C. 288, 103 S.E. 2d 344 (1958), a case dealing with

the North Carolina Firemen's Pension Fund. In that case, the Court relied heavily on the fact that a majority of the board of trustees was not selected by the State in holding that the board of trustees was not a State agency. Thus, we believe that there is a valid distinction between the present case and the cases involving school officials.

The Department, in the hearing on its motion to dismiss, relied heavily upon the contentions of both county and State officials that the only sanction imposed by the State is to withhold funds from the county. First of all, a close review of the statutes suggests that this method of control may not be the only means of control available to the State. Whether there are other means available to control these county employees is not as important as the fact that the State has adopted some procedures to control the actions of these persons. The fact that the State has not found it necessary to attempt to impose other sanctions strongly suggests that the present means of control is effective.

Again, we note that under G.S. 108-19(3), the county director is required to administer the State Foster Home Fund program. Also, we again quote from G.S. 108-66, the statute which establishes the State Foster Home Fund:

"The General Assembly shall appropriate funds to the Department of Human Resources for the purpose of providing assistance to needy children who are placed in foster homes by county departments of social services *in accordance with the rules and regulations of the Social Services Commission. . . .*" (Emphasis added.)

The legislature clearly contemplated a pattern of control over the county director, and, consequently, those persons serving under him, when it directed the county director to administer the Fund and, at the same time, gave the Commission rule-making and regulatory authority.

The control given the Commission has been implemented and exercised. The Commission has promulgated, as part of its Family Children's Services Manual, "Foster Care Policies". These policies are followed by the local staff, and, at least in Durham County, disciplinary procedures have been established to deal with personnel who do not follow these "policies". Evidence for the

Department indicates that the Commission controls the administration of the State Foster Home Fund through its absolute power over funds disbursement. In short, the Commission issues its rules and regulations as a part of its manual, and, if the county does not comply with these rules and regulations, the funds are withheld.

We do not suggest that every action taken by a county director of social services is an action for which the State may be liable under the Tort Claims Act. We do believe, however, that when the county director is required by statute to "administer" a State program and is, by that same statute, termed an "agent" of a State Commission and when the State Commission regulates and controls the county director's actions in administering that program, the county director is functioning as an agent of the State. Under these circumstances, the county director is an "agent" within the meaning of that term as it is used in G.S. 143-291. Thus, the State would be liable for the tortuous acts of the county director when he functions as an agent of the Social Services Commission.

It may well be that the term "agent" was never intended to be applied in a situation such as this. If so, the statutory change to obviate the possibility is for the General Assembly and not the courts.

The order of the Industrial Commission finding that it has jurisdiction in this case and directing that the case be set for hearing on the merits is

Affirmed.

Judges MARTIN and ARNOLD concur.