ZELMA PERKINS v. BROUGHTON HOSPITAL

No. 8310IC1310

(Filed 6 November 1984)

**1. Master and Servant §§ 69, 93— workers' compensation—refusal to accept further treatment—absence of order by Industrial Commission**

Plaintiff was not barred from receiving further workers' compensation benefits because of her refusal to undergo a myelogram which defendant employer's doctor had recommended where the Industrial Commission had not

ordered her to undergo a myelogram. An Industrial Commission letter permitting defendant to stop compensation payments "until plaintiff accepts further treatment" did not constitute an order directing plaintiff to undergo the myelogram.

**2. Master and Servant § 94.2— workers' compensation—continuation of temporary total disability—expert testimony not required**

Expert testimony was not required for the Industrial Commission to find that plaintiff still suffers from temporary total disability from a back injury; rather, such finding was supported by plaintiff's testimony that she is able to get around only on crutches, she still has trouble getting out of bed, still has pain running down the back of both legs, and still is able to stay up only about four hours at a time without having to sit or lie down.

APPEAL by defendant from Opinion and Award of the North Carolina Industrial Commission entered 12 September 1983. Heard in the Court of Appeals 27 September 1984.

In this proceeding for workers' compensation defendant admitted that plaintiff sustained a compensable back injury and made disability payments to her for twelve weeks. At that time, dissatisfied with plaintiff's recovery and the failure of plaintiff's doctor, a family practitioner, to fully report on plaintiff's condition, defendant had her examined by its orthopedist, who recommended that she submit to a myelogram. Plaintiff, being of the opinion that the doctor had been both rude and rough during the examination, refused to accept the recommendation. Defendant then applied to the Industrial Commission on its standard form for permission to stop the payments; the ground stated therefor, without any amplification or explanation, was "that employee refuses to accept further treatment." On 19 April 1982, the Industrial Commission responded to defendant's application with a form letter that advised defendant only: "You may stop the payment until plaintiff accepts further treatment." A copy of the letter was sent to plaintiff. Meanwhile, on her own initiative, plaintiff had been examined by another specialist, who recommended that she undergo a hospital work-up; but upon the doctor contacting defendant about it, he was told that defendant would not pay therefor and the work-up was not done. On 1 November 1982, a hearing was held to determine only, so the parties stipulated, "whether or not plaintiff refused medical treatment and were temporary total disability payments due between April 19, 1982 and the date of this hearing." At the same time it was also

ordered, with the parties' agreement, that plaintiff would be examined by the doctor she had consulted about a work-up several months earlier, and that "plaintiff's temporary total disability payments would be resumed as of November 1, 1982." Following the hearing Commissioner Vance found that "plaintiff did not refuse treatment as alleged" and was still totally disabled and thus entitled to compensation for the period involved. From an Opinion and Award based thereon defendant appealed to the Full Commission, and when that body adopted and affirmed the Opinion and Award of Commissioner Vance, defendant then appealed to this Court.

*No brief filed for plaintiff appellee.*

*Attorney General Edmisten, by Assistant Attorney General Sandra M. King, for defendant appellant.*

PHILLIPS, Judge.

This appeal has no business being here for two reasons. First, it is dismissable as a fragmentary and premature appeal from an interlocutory order that concerns only an interim period of disability and leaves unlitigated the other issues in the case. G.S. 7A-29; *Vaughn v. North Carolina Dept. of Human Resources*, 37 N.C. App. 86, 245 S.E. 2d 892 (1978), *aff'd*, 296 N.C. 683, 252 S.E. 2d 792 (1979). And, second, the appeal has no plausible legal or evidentiary basis. Rather than dismiss the appeal, however, we prefer to adjudicate the two contentions that defendant makes herein, as it would be unjust to require plaintiff to face them again later.

[1] The defendant's first contention is that under the provisions of G.S. 97-25 plaintiff is barred from receiving further benefits under the Act because she refused to undergo the myelogram that its doctor recommended. In pertinent part, G.S. 97-25 provides that "the refusal of the employee to accept any medical, hospital, surgical or other treatment or rehabilitative procedure *when ordered* by the Industrial Commission shall bar said employee from further compensation." (Emphasis supplied.) Thus, it is quite plain that though an employee's refusal to accept prescribed medical treatment can bar the employee from further compensation, it does so only if the treatment has been *ordered*

by the Industrial Commission. And in this case it is crystal clear that the Industrial Commission has not *ordered* plaintiff to do anything. To supply this deficiency defendant argues that its application for permission to stop the payments was tantamount to a motion for an order directing plaintiff to accept the recommended myelogram and that the Industrial Commission's letter permitting defendant to stop the payments "until plaintiff accepts further treatment" was tantamount to the order supposedly requested. But since the word myelogram does not appear in either the application or form letter, how could we possibly hold that these two papers between them somehow constituted an order directing plaintiff to submit to a myelogram? Orders requiring litigants to do specific things are not created by such indirection and substitution; they are created by courts and commissions issuing directives that explicitly inform parties what is required of them. And, in this instance, since defendant neither applied for nor obtained an order directing plaintiff to submit to a myelogram, but merely obtained permission to stop paying until plaintiff accepted "further treatment" of some undesignated nature and extent, no basis whatever exists for defendant's claim that plaintiff's rights to compensation were barred by her failure or refusal to accept the treatment involved. It is also clear, as the Commission found upon competent evidence, that plaintiff had not refused the recommended myelogram, though she knew myelograms were not without danger and admittedly did not want to undergo one unless necessary, but was merely in the process of obtaining a second opinion, which was both sensible and within her right, when defendant refused to pay for it.

[2] Defendant's other contention, that the Commission's finding that plaintiff is still temporarily and totally disabled is unsupported by the evidence because no expert testified to that effect, is of no more substance. Actually, the issue agreed to by the parties was not whether plaintiff was still disabled, but "were temporary total disability payments due between April 19, 1982, and the date of this hearing." Since defendant had already agreed to resume the payments that day, acknowledging thereby that plaintiff was still disabled, it would seem that the parties understood that plaintiff's condition was not then in issue and whether the payments were due depended entirely upon whether she had refused the treatment as alleged. Nevertheless, the Commission

found that plaintiff was still disabled and there was evidence to that effect. Though nearly all of plaintiff's testimony was about the recommended myelogram, she also testified that though better than she was the first few weeks after the injury when she was able to get around only on crutches, she still had trouble getting out of bed, still had pain running down the back of both legs, and still was able to stay up only about four hours or so at a time without having to sit or lie down. This testimony was competent and adequately supports the finding made. While some human conditions can only be testified to by medical experts, the one involved in this case is not one of them. The ordinary person knows, without having to consult a medical expert, when it is necessary to lie down and rest because his or her own body is tired, exhausted, or in pain, and the law has no inhibition against testimony to that effect. The credibility and weight of plaintiff's testimony was for the Commission to decide, not us. *Crawford v. Central Bonded Warehouse*, 263 N.C. 826, 140 S.E. 2d 548 (1965). Furthermore, the determination that plaintiff is still disabled is also supported to some extent by the recommendation of defendant's doctor that she undergo a lumbar myelogram, since it is well known that responsible doctors do not make such recommendations to those whose backs are not significantly impaired.

Affirmed.

Judges HEDRICK and BECTON concur.