*617
 
 STROUD, Judge.
 

 Plaintiff Darrell Thompson appeals from the Commission's opinion and award awarding attendant care services until 31 December 2012 and denying reimbursement to his wife after this date. On appeal, plaintiff argues that the Commission erred in concluding that he did not require attendant care services for his severe burn injuries after 31 December 2012. We agree, since the Commission's findings do not support its conclusion of law denying payment for attendant care services after 31 December 2012. Accordingly, we reverse and remand for entry of an opinion and award consistent with this opinion.
 

 Facts
 

 The Full Commission's opinion and award sets forth the following uncontested facts. Defendant operates a paper plant in Riegelwood, North Carolina, which plaintiff began working at in 2005. Plaintiff's job involved helping respond to calls of the operator and helping oversee the process of wood chips being cooked into paper. On 23 February 2012, while at work, plaintiff and a co-worker were assigned to inspect a malfunctioning knotter, which is "a vessel in which [a chemical mixture referred to as] black liquor, along with steam, breaks down the wood chips." While checking on the knotter, plaintiff heard a loud noise and instinctively turned to his right and ran away. Plaintiff was then sprayed on the left side of his face, back of his head, his back, and his arms with "a black liquor and pulp mixture spewing from the knotter." Although plaintiff's co-workers immediately grabbed him and put him under an emergency eye washer, he still suffered severe burns that covered more than 23 percent of his body, most severely on his left shoulder and arm.
 

 Plaintiff was initially taken to the New Hanover Regional Medical Center, but was then transferred and admitted to the UNC Burn Center in Chapel Hill, North Carolina, where he stayed from 23 February 2012 until 2 April 2012. While at the Burn Center, plaintiff underwent three major skin graft surgeries and was treated by several providers, including Dr. Cairns, the Director of the Burn Center.
 

 The Burn Center encourages family to engage in the care of their injured family members, so plaintiff's wife, Marcee Swindell-Thompson ("Ms. Thompson"), took leave from her job as a social worker and stayed with plaintiff at the Burn Center during the months he was there to assist him with basic and specialized care, including walking, bathing, and caring for his wounds. Defendant paid for Ms. Thompson's room and board so that she could be close to plaintiff while he recovered at the Burn Center, but she was not compensated for any of the care and services she provided plaintiff during his recovery. Plaintiff received psychological counseling while at the Burn Center and was diagnosed with depression and post-traumatic stress disorder as a result of the event on 23 February 2012. Plaintiff also participated in physical therapy during his time at the Burn Center.
 

 Plaintiff was discharged on 2 April 2012, though he was worried about "placing the burden on his wife to care for him at home." A social worker with the Burn Center, Monika Atanesian, wrote a letter to Ms. Thompson's employer asking that her FMLA leave be extended an additional two months, until 1 June 2012, because she "served as plaintiff's primary caregiver and would need to provide him with attendant and wound care for the next two to three months." From 2 April 2012 until 1 June 2012, Ms. Thompson testified that she spent almost all of her time on a daily basis on plaintiff's care.
 

 Plaintiff slowly regained his independence following his discharge from the Burn Center. Ms. Thompson would change his wraps twice a day, a process which took 45 minutes to an hour each time, and applied creams to his burns, which initially took 30 minutes but was down to just 10 minutes a day at the time of the hearing before the Deputy Commissioner. Plaintiff also participated in physical therapy after his discharge, and Ms. Thompson helped him get into the car and went with him to his sessions. Defendant provided plaintiff and Ms. Thompson with transportation to the physical therapy sessions until 29 June 2012, when they began to drive themselves because the Burn Center believed doing so would be therapeutic.
 

 *618
 
 As plaintiff's recovery progressed, the amount of care provided by Ms. Thompson decreased. Ms. Thompson returned to work on 1 June 2012 but arranged an alternate work schedule so that she could continue to provide care to her husband. She continued to help plaintiff get ready for physical therapy and drove him there and back each morning. She would then go to work at 10:00 a.m. and return home midday to make lunch for plaintiff. In the evenings, Ms. Thompson would remove and re-apply plaintiff's wraps after returning home from work.
 

 Plaintiff underwent 12 sessions of laser treatments at UNC with a plastic surgeon, Dr. Hultman, from November 2012 through July 2014, "to reduce the impact of the hypertrophic scarring." Dr. Hultman testified that some level of attendant care would be necessary for plaintiff for life. He also noted that he had never written a prescription for attendant care for plaintiff and that typically a burn patient's general needs are addressed by the Burn Center.
 

 Defendant filed a Form 60 Employer's Admission of Employee's Right to Compensation on or about 12 April 2012, accepting plaintiff's burn and skin graft injuries to his neck, back, shoulders, bilateral arms, and legs as compensable, but denied that his torn left rotator cuff was a result of the workplace accident and that Ms. Thompson was entitled to reimbursement for attendant care services she provided to plaintiff. On or about 10 February 2015, Deputy Commissioner Robert J. Harris issued an opinion and award finding that the attendant care Ms. Thompson had provided to plaintiff since 23 February 2012 was necessary and that further attended care is also "reasonably required to effect a cure, provide relief and/or lessen the period of Plaintiff's disability." The Deputy Commissioner thus concluded that all of the attendant care provided by Ms. Thompson was medically necessary and compensable, as is the ongoing attendant care to be provided.
 

 Defendant appealed to the Full Commission, and on 11 September 2015, the Commission issued its opinion and award, which affirmed much of the Deputy Commissioner's decision but found that plaintiff did not require attendant care services after 31 December 2012 and denied reimbursement to Ms. Thompson after that date. Specifically, the Full Commission found that "the attendant care services Ms. Thompson provided plaintiff following his hospital discharge, from April 2, 2012 through December 31, 2012, were reasonably required to effect a cure, provide relief, or lessen the period of plaintiff's disability." The Commission concluded that Ms. Thompson should be compensated for her services from 2 April 2012 until 1 June 2012 at a rate of $9.24 per hour, for six hours a day, and at the same rate from 2 June 2012 through 31 December 2012 for two hours per day.
 

 The Commission then found, "based upon a preponderance of the evidence in view of the entire record, that plaintiff regained sufficient independence in his post-discharge recovery such that he no longer needed attendant care services subsequent to December 31, 2012." The Commission concluded that "attendant care became medically necessary as a result of plaintiff's compensable burn injuries at the time of plaintiff's discharge from the Burn Center on April 2, 2012 and continued through December 31, 2012. The Commission concludes that attendant care was no longer medically necessary thereafter." Plaintiff timely appealed to this Court.
 

 Discussion
 

 I. Standard of Review
 

 This Court's review of an opinion and award filed by the Commission is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law."
 
 Deese v. Champion Int'l Corp.
 
 ,
 
 352 N.C. 109
 
 , 116,
 
 530 S.E.2d 549
 
 , 553 (2000). "The findings of fact by the Industrial Commission are conclusive on appeal if supported by any competent evidence."
 
 Gallimore v. Marilyn's Shoes
 
 ,
 
 292 N.C. 399
 
 , 402,
 
 233 S.E.2d 529
 
 , 531 (1977). The determination of whether a plaintiff is entitled to receive benefits for attendant care "is a conclusion of law which must be supported by findings of fact."
 
 Ruiz v. Belk Masonry Co.
 
 ,
 
 148 N.C.App. 675
 
 , 679,
 
 559 S.E.2d 249
 
 , 252 (2002).
 

 *619
 
 On an appeal from an opinion and award from the Commission regarding attendant care benefits, the standard of review for this Court is limited to a determination of (1) whether the Commission's findings of fact are supported by any competent evidence in the record; and (2) whether the Commission's findings justify its conclusions of law.
 

 The Commission's conclusions of law are reviewed
 
 de novo
 
 . If the conclusions of the Commission are based upon a misapprehension of the law, the case should be remanded so that the evidence may be considered in its true legal light.
 

 Shackleton v. S. Flooring & Acoustical Co.
 
 ,
 
 211 N.C.App. 233
 
 , 244-45,
 
 712 S.E.2d 289
 
 , 297 (2011) (citations, quotation marks, brackets, and ellipses omitted).
 

 II. Attendant Care Services
 

 On appeal, plaintiff argues that no competent evidence supports the Commission's finding that plaintiff has not required attendant care services since 1 January 2013.
 

 Defendant, by contrast, argues that the Commission did not err in refusing to extend attendant care beyond 31 December 2012 because a written prescription is required in order to receive compensation for attendant care services, and plaintiff did not have one for care beyond 31 December 2012. Defendant contends that
 

 [t]he note from Ms. Atanesian that is the "prescriptive instrument" clearly states the time frame permitted. ... There is no evidence, in the almost 1000 pages of medical records, that any additional prescription, letter or order was ever written to extend or renew this time, or that any specific, additional dates during which attendant care would be medically necessary have been enlarged beyond that date by the testimony or notes of any medical provider.
 

 N.C. Gen. Stat. § 97-2
 
 (19) (2011), defines "Medical Compensation" as follows:
 

 (19) Medical Compensation.-The term "medical compensation" means medical, surgical, hospital, nursing, and rehabilitative services, including, but not limited to,
 
 attendant care services prescribed by a health care provider authorized by the employer or subsequently by the Commission
 
 , vocational rehabilitation, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability; and any original artificial members as may reasonably be necessary at the end of the healing period and the replacement of such artificial members when reasonably necessitated by ordinary use or medical circumstances.
 

 (Emphasis added).
 

 In
 
 Shackleton
 
 , this Court reversed and remanded a portion of the Commission's opinion and award requiring a physician's prescription as "a prerequisite to attendant care compensation," finding that such requirement "constitutes a misapprehension of law[.]"
 
 211 N.C.App. at 251
 
 ,
 
 712 S.E.2d at 301
 
 . The
 
 Shackleton
 
 Court found that "the liberal construction of the Workers' Compensation Act suggests, and the prior decisions by our appellate courts require, that the test for attendant care be less restrictive than that imposed by the Full Commission in this case."
 
 Id.
 
 at 250,
 
 712 S.E.2d at 300
 
 . Ultimately, this Court concluded:
 

 The law of this State does not support an approach in which a physician's prescription is the sole evidence upon which the question of attendant care compensation hinges. Instead, we explicitly adopt what we believe has already been the practice in North Carolina-a flexible case-by-case approach in which the Commission may determine the reasonableness and medical necessity of particular attendant care services by reviewing a variety of evidence, including but not limited to the following: a prescription or report of a healthcare provider; the testimony or a statement of a physician, nurse, or life care planner; the testimony of the claimant or the claimant's family member; or the very nature of the injury.
 

 Id.
 
 at 250-51,
 
 712 S.E.2d at 300-01
 
 .
 

 Yet
 
 Shackleton
 
 was published on 19 April 2011, just a few weeks before an amendment
 
 *620
 
 to
 
 N.C. Gen. Stat. § 97-2
 
 (19) added the language: "including, but not limited to, attendant care services prescribed by a health care provider authorized by the employer[.]"
 
 See
 
 N.C. Sess. Law 2011-287 § 2 (eff. 24 June 2011). We have been unable to find any decisions by this Court addressing this issue since the amendment took effect. But the amendment does reject
 
 Shackleton's
 
 "flexible case-by-case approach" to determining the "reasonableness and medical necessity of particular attendant care services [,]"
 
 211 N.C.App. at 250
 
 ,
 
 712 S.E.2d at 301
 
 , by requiring that these services be "prescribed by a health care provider authorized by the employer [.]"
 
 N.C. Gen. Stat. § 97-2
 
 (19).
 

 The Commission addressed the need for attendant care in its "Findings of Fact" as follows:
 

 65. Based upon a preponderance of the evidence in view of the entire record, the Commission finds plaintiff's need for attendant care services declined as his recovery progressed and his wife returned to full-time work on June 1, 2012. Accordingly, the Commission finds plaintiff needed attendant care services from Ms. Thompson for two hours per day from June 2, 2012 through December 31, 2012. The Commission finds reasonable compensation for such services to be $9.24 per hour.
 

 66. The Commission finds, based upon a preponderance of the evidence in view of the entire record, that plaintiff regained sufficient independence in his post-discharge recovery such that he no longer needed attendant care services subsequent to December 31, 2012.
 

 Plaintiff argues that he is challenging the Commission's "finding" that he is not entitled to attendant care benefits past 31 December 2012. He does not challenge any of the other findings of fact, nor has defendant cross-appealed or challenged any other findings. Although the Commission has labelled its determination of entitlement to attendant care benefits as a finding of fact, it is actually a conclusion of law which we review
 
 de novo
 
 .
 
 Shackleton
 
 ,
 
 211 N.C.App. at 244-45
 
 ,
 
 712 S.E.2d at 297
 
 .
 
 See also Barnette v. Lowe's Home Centers, Inc.
 
 , --- N.C. App. ----, ----,
 
 785 S.E.2d 161
 
 , 165 (2016) ( "Regardless of how they may be labeled, we treat findings of fact as findings of fact and conclusions of law as conclusions of law for purposes of our review."). The Commission also addressed the basis for its determination in its conclusions of law, as noted below. We therefore must determine as a matter of law whether the Commission's findings of fact support its legal conclusion that plaintiff's entitlement to attendant care ended as of 31 December 2012.
 

 In reviewing the order on appeal in light of
 
 N.C. Gen. Stat. § 97-2
 
 (19), we have been unable to determine, based upon the evidence and findings of fact, why the Commission chose 31 December 2012 as the ending date for plaintiff's attendant care. While to some extent it appears that the Commission may have interpreted the phrase "prescribed by a health care provider" to require a written prescription, as defendant contends would be proper, the Commission addressed this issue in its conclusions of law and determined quite correctly that a written prescription was not required. The Commission concluded as follows:
 

 8. Section 97-2(19) of the Workers' Compensation Act does not require that a
 
 written
 
 prescription be issued by a medical provider in order for attendant care services to be payable by the employer. The statute merely requires that attendant care services be "prescribed" by the medical provider. "[S]tatutory interpretation properly commences with an examination of the plain words of a statute."
 
 Radzisz v. Harley Davidson of Metrolina
 
 ,
 
 346 N.C. 84
 
 , 89,
 
 484 S.E.2d 566
 
 , 569 (1997). "An analysis utilizing the plain language of the statute and the canons of construction must be done in a manner which harmonizes with the underlying reason and purpose of the statute."
 
 Electric Supply Co. v. Swaim
 
 [
 
 Swain
 
 ]
 
 Electrical Co.,
 

 328 N.C. 651
 
 , 656,
 
 403 S.E.2d 291
 
 , 294 (1991). "[W]hen language used in a statute is clear and unambiguous, [the Court] must refrain from judicial construction and accord words undefined in the statute their plain and definite meaning."
 
 Hieb
 
 [
 
 Hieb
 
 ]
 
 v. Lowery
 
 , 244 [344] N.C. 403, 409,
 
 474 S.E.2d 323
 
 , 327 (1996) (quoting
 
 *621
 

 Poole v.
 

 Miller
 
 ,
 
 342 N.C. 349
 
 , 351,
 
 464 S.E.2d 409
 
 , 410 (1995) ).
 
 See also
 

 Grant Constr. Co. v. McRae
 
 ,
 
 146 N.C. App. 370
 
 , 376,
 
 553 S.E.2d 89
 
 , 93 (2001).
 

 9. The Workers' Compensation Act does not define "prescribed" as used within
 
 N.C. Gen. Stat. § 97-2
 
 (19). Merriam-Webster's Online Dictionary, which includes the main A-Z listing of
 
 Merriam-Webster's Collegiate Dictionary, Eleventh Edition
 
 , defines "prescribed" as "to officially tell someone to use (a medicine, therapy, diet, etc.) as a remedy or treatment" or "to make (something) an official rule." As an intransitive verb, it means "to lay down a rule" or "to write or give medical prescriptions." As a transitive verb, it means "to lay down as a guide, direction, or rule of action," "to specify with authority," or "to designate or order the use of as a remedy."
 
 Merriam-Webster
 
 , An Encyclopaedia Britannica Company, available at
 
 http://www.merriam-webster.com/dictionary/prescribe
 
 . Similarly,
 
 The American Heritage Dictionary of the English Language
 
 defines prescribed as "To set down as a rule, law, or direction," "To order the use of (a medicine or other treatment)."
 
 The American Heritage Dictionary of the English Language, Fifth Edition
 
 , available online at
 
 https://ahdictionary.com/word/search.html?q=prescribed
 
 .
 

 10. Dr. Cairns testified that, while plaintiff required specialized wound care post-discharge from the Burn Center, he leaves it to Ms. Atanesian, the hospital social worker, to determine whether admission to a long-term care facility is needed or if the patient's family is able to provide the necessary wound care. Only if someone directly approaches Dr. Cairns about the issue does he make a personal decision about such matters. In this case, Ms. Atanesian determined that plaintiff's wife, Ms. Thompson, was able to provide wound care for plaintiff at home. On April 3, 2012, one day after plaintiff's hospital discharge, Ms. Atanesian wrote a letter to Ms. Thompson's employer advising that Ms. Thompson would serve as plaintiff's "primary caregiver" for purposes of providing "attendant and wound care." Ms. Atanesian provided this written directive in her capacity as Case Manager for Adult and Pediatric Burn Surgery at UNC Hospitals, under the supervision and direction of Dr. Cairns. Accordingly, the Commission concludes that a preponderance of the evidence in view of the entire record shows Dr. Cairns prescribed at-home attendant care for plaintiff and, in the absence of a written prescription by Dr. Cairns, the April 3, 2012 letter written by Ms. Atanesian qualifies as a prescriptive instruction issued in accordance with the medical directives of Dr. Cairns.
 

 11. Additionally, the North Carolina appellate courts have recognized certain instances in which common sense dictates that a particular result be reached when the facts of a case infer a logical conclusion. For instance, the state Supreme Court has held that, in some instances, the cause of a claimant's injuries will be evident to the "layman of average intelligence and experience" such that expert medical testimony is unnecessary to determine causation.
 
 Click
 
 [
 
 v. Pilot Freight Carriers, Inc.
 
 ], 300 N.C. [164] at 167, 265 S.E.2d [389] at 391 [ (1980) ]. The state appellate court has also held that "[t]he ordinary person knows, without having to consult a medical expert, when it is necessary to lie down and rest because his or her own body is tired, exhausted, or in pain. ..."
 
 Perkins v. Broughton Hosp.
 
 ,
 
 71 N.C. App. 275
 
 , 279,
 
 321 S.E.2d 495
 
 , 497 (1984) (cited by
 
 Britt v. Gator Woo
 
 [
 
 Woo
 

 d
 
 ]
 
 Inc.
 
 ,
 
 185 N.C. App. 677
 
 , 682,
 
 648 S.E.2d 917
 
 , 921 (2007) ). Given the extent of plaintiff's burn injuries, which necessitated approximately two months of in-patient care at the Burn Center, it logically follows that plaintiff continued to require specialized wound care for a period of time following his discharge therefrom and that he did, in fact, receive wound care from his wife who obtained training in how to provide such care from medical professionals at the Burn Center. Based upon a preponderance of the evidence in view of the entire record, and reasonable inferences drawn therefrom, the Commission concludes that Dr. Cairns prescribed attendant care for plaintiff by directing the Burn Center's
 
 *622
 
 social worker, Ms. Atanesian, to evaluate Ms. Thompson's ability to provide such care in lieu of transferring plaintiff to a long-term care facility. The Commission concludes that Dr. Cairns "prescribed" at-home attendant care for plaintiff by providing this medical directive to Ms. Atanesian, who, in turn, approved Ms. Thompson to provide the at-home attendant care.
 
 N.C. Gen. Stat. § 97-2
 
 (19).
 

 We agree with the Commission's determination that a
 
 written
 
 prescription is not necessary. As the order noted, one of the most basic rules of statutory interpretation is that courts may not delete or add words to clear statutory language.
 

 The primary objective of statutory interpretation is to ascertain and effectuate the intent of the legislature. If the language of the statute is clear and is not ambiguous, we must conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms. Thus, in effectuating legislative intent, it is our duty to give effect to the words actually used in a statute and not to delete words used or to insert words not used.
 

 Lunsford v. Mills
 
 ,
 
 367 N.C. 618
 
 , 623,
 
 766 S.E.2d 297
 
 , 301 (2014) (citations and quotation marks omitted).
 

 Yet since all of plaintiff's physicians said that plaintiff required and would continue to require attendant care for his burn injuries, it appears that the Commission relied upon the social worker's letter, at least to some extent, precisely because it was the only
 
 written
 
 directive regarding attendant care. But as we have already noted, the Commission also recognized that
 
 N.C. Gen. Stat. § 97-2
 
 (19) does not require a written prescription for attendant care.
 

 Id.
 

 The statute simply requires that attendant care be prescribed by an authorized "health care provider," and this term is defined in the next subsection:
 

 (20) Health care provider.-The term "health care provider" means physician, hospital, pharmacy, chiropractor, nurse, dentist, podiatrist, physical therapist, rehabilitation specialist, psychologist, and any other person providing medical care pursuant to this Article.
 

 N.C. Gen. Stat. Ann. § 97-2
 
 (20).
 

 Dr. Cairns was plaintiff's "health care provider authorized by the employer [,]" and he ordered that plaintiff receive care initially under the supervision of the Burn Center and then with attendant care continuing at home.
 
 N.C. Gen. Stat. § 97-2
 
 (19). Chapter 97, which contains the Worker's Compensation Act in full, does not provide a definition for a "prescription" or "prescribe." Elsewhere in state and federal law, certain controlled substances do specifically require a
 
 written
 
 prescription from an authorized medical provider.
 
 See, e.g.
 
 ,
 
 N.C. Gen. Stat. § 90-106
 
 (a) (2015) ("Except when dispensed directly by a practitioner, other than a pharmacist, to an ultimate user, no controlled substance included in Schedule II of this Article may be dispensed without the written prescription of a practitioner.");
 
 N.C. Gen. Stat. § 90-87
 
 (23) (2015) (defining "prescription" under the Controlled Substances Act as "[a] written order or other order which is promptly reduced to writing for a controlled substance as defined in this Article[.]"). The most general definition of "prescription order" we can find in the North Carolina General Statutes is found in the North Carolina Pharmacy Practice Act:
 

 "Prescription order" means a written or verbal order for a prescription drug, prescription device, or pharmaceutical service from a person authorized by law to prescribe such drug, device, or service. A prescription order includes an order entered in a chart or other medical record of a patient.
 

 N.C. Gen. Stat. § 90-85.3
 
 (t) (2015).
 

 Although the Commission did not, according to its findings and conclusions, interpret the phrase "prescribed by a health care provider" to require a written prescription, its conclusions still seem to rely upon the FMLA letter from the social worker, Ms. Atanesian, as a written expression of the physician's orders. Of course, the social worker could not write a prescription, since she was not a "health care provider[,]" but she could and did convey the instructions of the treating physician, as an employee of the
 
 *623
 
 Burn Center. The Commission found that Ms. Atanesian's letter "qualifies as a prescriptive instruction issued in accordance with the medical directives of Dr. Cairns." Use of the adjective "prescriptive" does not make the social worker's letter a "prescription," and as we have explained, there was no need for a written prescription. Dr. Cairns directed that plaintiff continue to receive attendant care, and the Burn Center oversaw the care and assisted plaintiff as needed.
 

 We recognize that attendant care services are quite different from a bottle of pills, and they are certainly not dispensed at pharmacies. But we believe it is instructive that a prescription, except in certain limited situations set forth in various statutes, can be
 
 either
 
 a "written or verbal order."
 

 Id.
 

 There was no need for the Commission to try to turn the FMLA letter into a written "prescription" when the statute merely requires that the attendant care be "prescribed by a health care provider authorized by the employer[.]"
 
 N.C. Gen. Stat. § 97-2
 
 (19). Dr. Cairns was plaintiff's authorized "health care provider" and he obviously "prescribed" that plaintiff needed attendant care, both just after his release from the hospital and ongoing care for the future. In fact, he noted that if Ms. Thompson could not continue to provide this care, another medical intervention would be necessary.
 

 In addition, we recognize that the amendment to
 
 N.C. Gen. Stat. § 97-2
 
 (19) may have been intended to limit the scope of attendant care allowed under
 
 Shackleton
 
 , and there is no need to insert the words "in writing" into the statute to accomplish this intent. The statute, as written, allows attendant care services only where such services have been determined medically necessary by a health care provider authorized by the employer,
 
 N.C. Gen. Stat. § 97-2
 
 (19), and thus cannot be based only upon "a variety of evidence" including "testimony of the claimant or the claimant's family member; or the very nature of the injury."
 
 Shackleton
 
 ,
 
 211 N.C. App. at 250, 251
 
 ,
 
 712 S.E.2d at 301
 
 .
 

 Yet the Commission's order extends the care to 31 December 2012, after the period of time set forth in the FMLA letter, so we must also consider the basis for this time period. It seems that Conclusion of Law No. 11 addresses this and that the Commission extended attendant care past 1 June 2012 based upon the reduction in time needed for care each day and because "common sense dictates that a particular result be reached when the facts of a case infer a logical conclusion." But to the extent that the Commission relied upon "common sense" to set an ending date, its conclusion cannot comport with
 
 N.C. Gen. Stat. § 97-2
 
 (19), which requires that attendant care be "prescribed by a health care provider authorized by the employer[.]" Based upon the findings of fact, it is apparent that the Commission determined that plaintiff's attendant care services were medically necessary beyond 1 June 2012. But, in light of the actual medical evidence in this case, it is not apparent from its findings of fact why the Commission ultimately concluded that "attendant care was no longer medically necessary" after 31 December 2012.
 

 Defendant argues that
 

 [e]ven if the legal requirement for a prescription is ignored or diluted, there is still competent evidence in the record to support the Commission's findings that attendant care was simply not medically necessary after 31 December 2012. Competent evidence showed that Plaintiff returned to normal life activities during 2012, including social activities, serving on a church committee, having a normal intimate life with his spouse, and playing golf, and he was simply not a candidate for attendant care services at that time.
 

 We first note that although there was evidence about plaintiff's activities, the Commission did not make any finding that plaintiff had returned to "normal life activities" as defendant contends as of the date of the hearing, although he was moving in that direction. Instead, the Commission found as follows:
 

 53. As of the date of hearing before Deputy Commissioner Harris, plaintiff was not yet back to playing a full golf game at a course. Plaintiff testified that he was able to chip the ball around in his yard. He was also doing some recreational shooting, holding the handgun in his right hand and
 
 *624
 
 using his left hand for support and balance under his right triceps.
 

 54. Also, as of the date of hearing before the Deputy Commissioner, plaintiff was able to drive himself short distances, but his medications prevented him from driving long distances. Plaintiff testified that he continued to have sharp pains in and about his left shoulder throughout each day, and he was unable to lift with that shoulder, although he had not received any medical restrictions against use of the left upper extremity.
 

 55. Plaintiff testified that he continued to avoid going outside in the sun because it is too painful for him.
 

 56. As of the date of hearing before the Deputy Commissioner, plaintiff had not returned to work. Defendant did not contend that plaintiff is no longer disabled, either before the Deputy Commissioner or at the Full Commission hearing.
 

 These findings are not challenged by either party. Thus, defendant's argument implicitly recognizes that the Commission relied upon the letter up to 1 June 2012, but awarded attendant care until 31 December 2012 upon its determination that some care was medically necessary after 1 June, but in a reduced amount as the time needed to care for plaintiff decreased.
 

 Essentially, it appears that the Commission used a hybrid approach, basing its award upon a written "prescriptive instruction" up to 1 June 2012 and "common sense" until 31 December 2012. But the statute now sets forth a clear basis for an award of attendant care: the care must be "prescribed by a health care provider authorized by the employer[.]" Based upon the record, all of the attendant care in this case was directed by plaintiff's authorized physicians, from immediately after his injury and continuing through the date of the hearing. The evidence shows that the time needed for care was reduced, but does not show that it disappeared entirely. There was no evidence, medical or otherwise, that set 31 December 2012 as the time plaintiff's need for attendant care ended. The evidence and findings all indicate that plaintiff will need some care for life, and the evidence is essentially uncontroverted. Ms. Thompson testified that for the period of time after 2012, it took her about 30 minutes a day to assist plaintiff with his compression garments and to apply lotion, sunscreen, and Cetaphil to his skin. Plaintiff similarly testified that it took about 10 minutes per day for Ms. Thompson to apply creams and 15 to 30 minutes per day to attend to his wounds.
 

 Regarding attendant care for the time period the Commission approved or beyond, Dr. Hultman stated in a deposition that he "would be happy to order that[,]" but that it would be hard to put a specific number on the amount of care per day that a patient would need and that he would go with whatever Dr. Cairns said. Plaintiff's physicians, Dr. Cairns and Dr. Hultman, agreed in separate depositions that Ms. Thompson's attendant care has all been medically necessary. Dr. Cairns explained that "[i]f we didn't have his wife participating in his care, we would have had to come up with another plan, which would have meant that ... another medical intervention would have been required[.]"
 

 Dr. Hultman explained plaintiff's ongoing medical need, noting that "attendant care is going to be a necessary part of [plaintiff's] lifelong needs" and that "as a burn surgeon ... I would say with confidence that he is going to require some type of attendant care." He noted that plaintiff's scars would "need to be massaged and have a moisturizing agent put on every day, indefinitely." Additionally, he stated that "given [plaintiff's] limited mobility with his shoulder, it makes it harder for him to care for himself." Dr. Hultman estimated that massaging and moisturizing plaintiff's scars and assisting with his compression garments could take between 90 to 120 minutes. Thus, while the amount of time needed for attendant care may change over the years, all of his treating physicians agreed he will continue to need
 
 some
 
 amount of care. The Commission's reduction of compensation to two hours per day after 1 June 2012 is supported by the evidence, but there is no evidence that plaintiff's need for attendant care, as ordered by his physicians, was over as of 31 December 2012. We therefore conclude that the Commission erred in its findings and conclusions of law
 
 *625
 
 regarding Ms. Thompson's attendant care services provided to plaintiff after 31 December 2012 and the need to compensate her for those continuing services. Attendant care must be "prescribed by a health care provider" and all of plaintiff's physicians agreed that he would continue to need attendant care. The extent of his needs will certainly change over time, but based upon all of the evidence in this case and the Commission's findings of fact, we cannot determine why it set 31 December 2012 as the ending date for attendant care.
 

 Conclusion
 

 Accordingly, we reverse the Full Commission's opinion and award and remand for entry of an amended opinion and award with additional findings of fact and conclusions of law on the issue of Ms. Thompson's attendant care services to plaintiff consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 Judges BRYANT and DIETZ concur.